24 C.C.P.A.(Patents)

**BECK, KOLLER & CO., Inc., v. BAKE-LITE CORPORATION (nine cases).**

**Patent Appeals Nos. 3816–3824.**

Court of Customs and Patent Appeals.

June 21, 1937.

Munson H. Lane, of Washington, D. C., for appellant.

Charles H. Potter and Harold T. Stowell, both of Washington, D. C. (Jos. N. Nielsen, of New York City, of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

Patent Appeal No. 3816—Opposition No. 12,545.

This is an appeal from the decision of the Commissioner of Patents sustaining the opposition of the Bakelite Corporation to the registration by Beck, Koller & Co., Inc., hereinafter usually referred to as applicant-appellant, in "Class 6, Chemicals, Medicines, and Pharmaceutical Preparations," of the word "Beckacite" used as a trade-mark on a special type of synthetic resin suitable for use solely in the paint, varnish, and lacquer industry. Applicant-appellant's application for the registration of the trade-mark "Beckacite" calls for its use upon "Synthetic Resins." A motion to amend was made so as to restrict the registration sought to "oil-soluble varnish and lacquer resins."

The opposition of the Bakelite Corporation is based upon opposer's trade-mark "Bakelite," No. 75,266, registered September 14, 1909, for "condensation products of phenol and formaldehyde, in Class 6, Chemicals, medicines and pharmaceutical preparations."

This case is the first of a group of nine appeals numbered 3816 to 3824, inclusive, which involve the same parties and, for the most part, the same issues. The record in appeal No. 3816 includes the testimony and exhibits applicable to all cases and also the answers of the applicant-appellant in all cases. The main briefs of the parties are filed in appeal No. 3816, and briefs in the other appeals are filed by the parties so as to explain the differences in the cases and discuss the issues there involved which are not discussed in appeal No. 3816.

There is very little dispute about the facts proven, and the main issue is one of law and involves a determination of whether or not the goods upon which the respective marks were used at certain times were of the same descriptive properties.

Applicant-appellant makes no claim, which is of concern here, to the use of the mark prior to 1924. Since that date, its mark "Beckacite" has been used in the sale of synthetic phenolic resins which are sold in this country to the manufacturers of varnishes and lacquers. Applicant-appellant's synthetic resin is dissolved in oil by the varnish and lacquer manufacturers to produce air-drying varnishes and lacquers, and is a substitute for the natural resins heretofore employed for that purpose.

The opposer-appellee prior to 1924 had manufactured a synthetic resin which was a new article of manufacture in which the opposer-appellee had a monopoly by virtue of certain patents. This resin possessed numerous valuable properties such as becoming solid at ordinary temperatures without lessening in volume. It had good insulating properties and long before 1924 went into general use in the electrical trades and was molded into various articles of manufacture. It was soluble in oil to only a small extent and was not of the type of resin which is used by the varnish manufacturers in manufacturing the air-drying type of varnish. Artificial heat was normally employed to set and harden

the varnish made from opposer's resin. It was soluble in alcohol.

Later than 1924, and after the applicant-appellant had entered the field, opposer-appellee manufactured a synthetic resin which was soluble in air-drying oils. The exact date of opposer-appellee's entry into this field is in dispute but, since it was subsequent to 1924, we do not regard this matter as of importance. It is conceded that prior to 1924 opposer-appellee supplied consumer customers with spirit varnishes which had a rather limited use owing to the baking requirement. The weight of the evidence is to the effect that it did not sell to varnish manufacturers a phenolic resin for use in making paints and varnishes until after applicant-appellant had entered the field. This fact is in dispute. The tribunals below on this question found against the opposer-appellee. On this question opposer-appellee in this court disputes the contention of applicant-appellant that it was the first to market oil-soluble resins in this country and points out the testimony of some witnesses (which the applicant-appellant claims were interested) to show that it did sell some such resin prior to 1924 and that samples of this resin were sent out to various customers for trial. Certain shipping papers were introduced to show that opposer-appellee's activities in dealing with this character of resin were increasing gradually in 1925 and grew steadily from that time. The Examiner of Interferences found, which finding was evidently approved by the Commissioner of Patents, that prior to 1924, when the applicant-appellant entered the field, opposer was not selling or dealing in, except in an experimental way, oil-soluble phenolic resins for use in making varnishes and lacquers.

In this opposition, therefore, is presented for decision, first, the question of law as to whether or not at the time applicant-appellant adopted and first used its mark in this country (1924) it used it on goods of the same descriptive properties as those upon which opposer-appellee was then using its mark. Upon this question it is the contention of applicant-appellant that varnishes generally, or varnishes made from non oil-drying resins or resins which were not soluble in oil, are not goods of the same descriptive properties as oil-soluble varnish and lacquer resins. Its argument is chiefly based upon the contention that its product was sold only to the manufacturers

of air-drying varnishes and lacquers, and that the goods of the opposer prior to 1924 could not be sold to this class of customers and were for the most part manufactured into molded articles or sold in the form of spirit varnishes (dissolved in alcohol), and that, since there was no likelihood of confusion, applicant-appellant should not be deprived of its right of registration and that it should not be held that the goods of the parties were of the same descriptive properties.

The question has been argued at great length as to whether or not after 1924 the opposer had the right to use its "Bakelite" trade-mark in entering the restricted field which the applicant-appellant had entered. This was one of the main questions ruled upon by the Examiner of Interferences and by the Commissioner. On that subject and on the subject as to the likelihood of confusion the Commissioner said:

"The answer to the applicant's question as to whether the opposer possessed the right to enter the specific field previously occupied by the applicant depends upon the determination of whether or not the goods of the opposer at the time the applicant entered the field, and prior thereto, possessed the same descriptive properties as the goods of the applicant. If the goods of the respective parties possessed the same descriptive properties at that time, and I am constrained to agree with the Examiner that such was the case, then it is well settled that the opposer possessed the right to later extend its business to include goods which, although specifically different in some characteristics, are nevertheless of the same class and may be said to possess the same descriptive properties. In support see: Boston Rubber Shoe Company v. Abramowitz, 47 App.D.C. 199, 247 O.G. 247, 1918 C.D. 137; California Packing Corporation v. Halferty, 295 F. 229, 54 App.D.C. 88, 320 O.G. 700, 1924 C.D. 225; Berghoff Brewing Association v. Popel-Giller Co., Inc., 273 F. 328, 50 App.D.C. 364, 287 O.G. 405, 1921 C.D. 192; Parsons Trading Co. v. Hoffman, 107 Misc. 536, 177 N.Y.S. 713, 9 T.M.Rep. 387.

"Notwithstanding the distinctive differences between the synthetic resins of the opposer and the applicant in 1924, as far as the air-drying varnish trade is concerned, because of their relation and association, they do possess the same descriptive properties; they are derivatives of phenol and susceptible of the common definition

'synthetic resins'; in regard to their relation and association in trade, it may be noted that resin is an essential element of varnish, and that prior to 1924, the date Reichhold entered the United States with a synthetic resin for air-drying varnishes, synthetic resins for the manufacture of artificial heat-drying varnishes had been substituted for natural resins in the manufacture of varnishes, so that it seems beyond doubt but that the synthetic resins made and sold by the opposer in 1924, and prior thereto, possess the same descriptive properties as the synthetic resin introduced by the applicant."

In view of our conclusion, we see no necessity for discussing at any great length the question as to whether or not under the circumstances the opposer-appellee had the right to enter the field which had been entered by the applicant-appellant, because, as the Commissioner has stated, it all depends upon whether the goods upon which the "Bakelite" trade-mark was used prior to 1924 were of the same descriptive properties as the goods upon which the "Beckacite" trade-mark was used. If they were, of course applicant-appellant is not entitled to registration, and it would follow that the opposer-appellee was privileged to enter the alleged restricted field which the applicant-appellant claims for itself.

We agree with the finding of the tribunals that the goods sold by both parties at the time when the applicant-appellant entered the field were of the same descriptive properties. Opposer-appellee also sold synthetic phenolic resin manufactured into spirit varnishes. Both resins were made from phenol. Both resins were used for varnishes, and the mere fact that the resins had different properties or that the ultimate product made from them was used in a slightly different way and sold, at that particular time, to different customers, does not alter the situation. Varnish manufacturers to whom applicant-appellant sold its resins may wish to make and sell several kinds of varnishes. Trade practices change, and the owner of a mark for use on condensation products of phenol should not be so hampered in its trade practices as to prevent it from improving its product or giving its said product certain new qualities. The goods of both parties are so closely related that they must be regarded as belonging to the same class for trade-mark registration purposes.

While applicant-appellant argues here that the trade-marks are not similar, we do not think there is any merit to such contention. The tribunals below gave very little consideration to this subject. The record shows that the witnesses in speaking of the two terms were confused and it is too obvious to admit of logical contention to the contrary that "Bakelite" and "Beckacite" have so many things in common, notwithstanding the alleged fanciful manner of writing the term "Beckacite," that the concurrent use of the two terms upon goods of the same descriptive properties would lead to such confusion as the Trade-Mark Registration Law (15 U.S.C.A. § 81 et seq.) was intended to prevent.

As to the origin of its mark applicant-appellant states in its brief that the trade-mark "Beckacite" and some of the other trade-marks involved in these appeals such as "B K C," "Beckolloid" and "Beck-O-Lac" are derived from the firm name Beck, Koller & Co., which originally had the trade-mark "B K C" and used it since 1868 in Berlin and Vienna, and that when Helmuth Reichhold, president of Beck, Koller & Co., Inc., introduced the goods into this country, it used its marks so as to suggest the origin of the goods with Beck, Koller & Co., Inc., and that the company always tried to emphasize the term "Beck," which was the surname of one of the original owners of the business, and also in some of the marks to suggest the word "Koller." In discussing the similarity of the trade-marks hereinafter in Patent Appeal No. 3818, further reference will be made to this phase of the case.

Another question was discussed in the briefs of both parties, which by reason of the above conclusion requires no attention here other than to state it. It is the contention of the opposer that the judgment against the applicant in opposition No. 9592 which involved the same parties and the same marks is res adjudicata of the issue in the present opposition. This matter was discussed by the Examiner of Interferences, and he held that in any consideration of the resemblances and differences found in the marks the decision in said opposition proceeding was stare decisis with him. The Commissioner gave no consideration to this question and there is no assignment of error presenting the question here. Moreover, if the question had been presented, it would not be neces-

sary for us to decide it in view of our conclusion hereinbefore reached.

■ Since we conclude that the goods upon which the mark "Beckacite" is used are of the same descriptive properties as the goods upon which opposer used its mark "Bakelite" prior to 1924 and subsequent thereto, and that the marks are confusingly similar when used upon goods of the same descriptive properties, it follows that the Commissioner correctly affirmed the decision of the Examiner of Interferences, in sustaining the opposition of the opposer and refusing registration of applicant's mark and the decision of the Commissioner is affirmed.

### Patent Appeal No. 3817—Cancellation No. 2591.

This is the second of a series of appeals relating to opposition and cancellation proceedings which proceedings involve several different trade-marks.

■ In the instant cancellation proceeding the Commissioner of Patents affirmed the decision of the Examiner of Interferences in granting the petition of the Bakelite Corporation for cancellation of appellant's registered trade-mark 231,360, of August 16, 1927, "Beckacite" used for "Dry, Paste, and Ready-Mixed Paints; Varnishes, Lacquers in Class 16, Paints and painter's materials." The parties are the same, the testimony and exhibits are the same, and the issues are substantially the same as were present in the above-entitled appeal No. 3816, opposititon No. 12,545, supra. Both sides concede that the general principles applicable to this case were discussed at length in the briefs in that companion appeal, and the Commissioner in deciding the cancellation proceeding stated:

"It satisfactorily appears that the applicant for cancellation has used the notation 'Bakelite' in trade on a phenol resin varnish as of a date long prior to any claimed by the respondent for use of the notation 'Beckacite' on the goods stated.

"For substantially the reasons set forth in my decision today in the related Opposition No. 12,545, it is held that confusion in trade would be likely to result from the simultaneous use of the marks upon the goods of the respective parties here involved.

"Being convinced that the relief prayed for should be granted, the decision of the Examiner of Interferences is believed to be without error and is accordingly affirmed."

In view of our conclusion in Patent Appeal No. 3816, supra, we are in agreement with the conclusion reached by the Commissioner and his decision is affirmed.

### Patent Appeal No. 3818—Cancellation No. 2590.

■ This is the third of a series of appeals in related opposition and cancellation proceedings involving a number of different trade-marks, some of which were registered and others of which registration was applied for.

This is a cancellation proceeding and the respondent-appellant, Beck, Koller & Company, Inc., has appealed here from a decision of the Commissioner of Patents affirming the decision of the Examiner of Interferences granting the petition for cancellation of the registered mark. The mark relied upon by the petitioner-appellee, Bakelite Corporation, as was stated by the Commissioner, "comprises a trefoil border enclosing the capital letter 'B' in the single upper lobe and the conventional sign of infinity in the two lower lobes." This mark is registered in registration No. 199,128 of June 2, 1925, for "Condensation Products of Phenols and Formaldehyde, in Class 1, Raw or partly-prepared materials," and in registration No. 206,013, of November 24, 1925, for "Paint Enamels, Lacquers, and Varnishes, in Class 16, Paints and painters' materials." In both registrations the letter "B" and the sign of infinity are large enough to almost completely fill the trefoil or clover leaf border.

The mark of the respondent-appellant, registration No. 230,009, of July 12, 1927, for "Dry, Paste, and Ready-Mixed Paints, Varnishes, Lacquers, In Class 16, Paints and Painters' materials," is described by the Commissioner as comprising "a slightly ornate trefoil border having a single lobe lowermost and enclosing the capital letters 'B', 'K', and 'C', symmetrically arranged, each within one of the lobes of the trefoil." The letters "B," "K," and "C," like the characters in appellee's mark, are so arranged as to almost completely fill the trefoil figure.

The Commissioner said:

" * * * For substantially the reasons set forth in my decision today in the related Opposition No. 12,545, it is held that

the goods of the parties do possess the same descriptive properties and that priority of right has been established in the applicant, so that the question of likelihood of confusion in trade turns upon a consideration of the marks used by the parties.

" * * * The similarity of the marks, if not obvious from this description, [quoted supra] is immediately apparent upon an inspection of the marks themselves. The letter 'B' is prominently displayed in each mark, and the trefoil border, common to both marks, is similarly represented in each. I am persuaded that confusion in trade would be likely to result from the simultaneous use of the marks here involved upon the goods of the opposing parties. Any doubt on this issue must be resolved in favor of the prior user which is here the applicant for cancellation."

We are in agreement with the above finding of the Commissioner, and in accordance with our statement in the opinion in appeal No. 3816, supra, we wish to say that it seems to us that, if the respondent in introducing its goods into this country wished to distinguish its goods from the goods of the petitioner-appellee, it would not have adopted a mark so similar to that of the latter. This mark is used in connection with the "Beckacite" mark, and the adoption of the two marks under the circumstances shown by this record would not suggest that the newcomer sought to distinguish its goods from those of the appellee.

We are in agreement with the conclusion reached by the Commissioner of Patents and his decision is affirmed.

Patent Appeal No. 3819—Opposition No. 12,580.

■ This is the fourth of a series of appeals in opposition and cancellation proceedings which are closely related and involve certain trade-marks which are either registered or sought to be registered by Beck, Koller & Co., Inc.

In this instance, Beck, Koller & Co., Inc., is the applicant-appellant and seeks to register, in class 6, chemicals, medicines, and pharmaceutical preparations, over the opposition of the Bakelite Corporation, the opposer-appellee, a mark quite similar to, but differing in some respects from, the trefoil mark described in the last above decided appeal. The difference is that to the trefoil "B K C" mark is added at the lower right side thereof a representation of the terrestrial globe with the notation around it "World Wide Distribution." The mark of the Bakelite Corporation, opposer-appellee, is the trefoil mark described in the last above-decided appeal. The goods of applicant-appellant, upon which the mark is used, according to the application, are "synthetic resins, plastic synthetic resins and ester gums," and by amendment it is proposed to change the description to "soluble synthetic varnish and lacquer resins and ester gums."

In affirming the decision of the Examiner of Interferences, the Commissioner said:

"The opposer relies upon its trade-mark registration No. 199,128, and, for substantially the reasons set forth in my decision today in the related Opposition No. 12,545, the goods of the parties are held to possess the same descriptive properties, whether the goods of the applicant be those described in the application as published or in the amendment filed February 8, 1933, in which it was proposed to change the description of the goods to 'soluble synthetic varnish and lacquer resins and ester gums.'

"The marks here involved are only slightly more different than the marks which were considered in a companion proceeding in a decision of even date herewith, namely, Cancellation No. 2590. The difference is caused by the addition to the mark involved in the companion case of a representation of a terrestrial globe with the notation 'World Wide Distribution.' Such an addition would tend to indicate 'world wide distribution' rather than a difference of origin or ownership; and when the marks are considered in their entireties, as they must be, I am convinced that confusion in trade would be likely to result from the simultaneous use of the marks here involved upon the goods of the opposing parties."

The main issue of this case relating to the descriptive properties of the goods of the parties is decided in appeal No. 3816, supra. We are in agreement with the decision of the Commissioner to the effect that, the marks being confusingly similar and the goods of the respective parties having the same descriptive properties, the opposition was properly sustained and registration properly denied, and his decision is affirmed.

Patent Appeal No. 3820—Opposition
No. 12,688.

██ This is the fifth of a series of opposition and cancellation proceedings which involve trade-marks either registered or for which registration was sought by Beck, Koller & Co., Inc., applicant-appellant.

The Commissioner of Patents affirmed the decision of the Examiner of Interferences, who sustained the opposition.

The marks involved herein are the same as those involved in the companion opposition proceeding, appeal No. 3819, last above decided.

In the application as it is proposed to be amended, applicant-appellant seeks to register the trade-mark for "oil soluble plastic resins and solutions thereof in oils and mineral spirits used as painters' materials" in class 16, paints and painters' materials.

The Commissioner of Patents was of the opinion that, under the circumstances, the concurrent use of the marks in trade on the goods of the respective parties would be likely to result in confusion to the trade and said: "The applicant for cancellation [opposition] relies upon its trademark registration No. 206,013, and it satisfactorily appears that the applicant has used the mark disclosed therein in trade on a phenol resin varnish since a date long prior to any claimed by the respondent for use of its mark upon the goods stated. For substantially the reasons set forth in my decision today in the related Opposition No. 12,545, it is held that the goods of the parties do possess the same descriptive properties and that priority of right has been established in the applicant, so that the question of likelihood of confusion in trade turns upon a consideration of the marks used by the parties."

The decision of this case is controlled by our decision in patent appeal No. 3816, supra, and in the last above decided case. We are in agreement with the conclusion reached by the Commissioner of Patents and his decision is affirmed.

Patent Appeal No. 3821—Cancellation
No. 2592.

██ In this cancellation proceeding Beck, Koller & Co., Inc., has appealed from the decision of the Commissioner of Patents reversing the decision of the Examiner of Interferences, who denied the petition for cancellation filed by the Bakelite Corporation. This is the sixth of a series of appeals involving trade-mark proceedings which were submitted upon a single testimonial record and involves several marks registered or sought to be registered by Beck, Koller & Co., Inc.

The mark sought to be cancelled is "Beckolloid" used for "Paints, Dry, Paste, and Ready Mixed, as Well as Varnishes and Lacquers, in Class No. 16, Paints and painters' materials," registration No. 258,623, of July 9, 1929. The Bakelite Corporation based its petition for cancellation upon its well-known trade-mark "Bakelite," registration No. 75,266, of September 14, 1909, for "condensation products of phenol and formaldehyde, in Class 6, Chemicals, medicines, and pharmaceutical preparations," and registration No. 210,522, of March 16, 1926, for "Paint Enamels, Lacquers, and Varnishes, in Class 16, Paints and painters' materials."

The Examiner of Interferences concluded that there was not sufficient similarity between the marks to bring about confusion in trade in event of their concurrent use, and accordingly dismissed the petition for cancellation.

In reversing the decision of the Examiner of Interferences, the Commissioner said:

"It satisfactorily appears that the applicant for cancellation has used the notation 'Bakelite' in trade on a phenol resin varnish as of a date long prior to any claimed by the respondent for use of the notation 'Beckolloid' on the goods stated, and for substantially the reasons set forth in my decision today in the related Opposition No. 12,545, it is held that the goods of the parties possess the same descriptive properties. This being so, the sole question here to be decided is whether the two notations are confusingly similar.

"In my opinion the two words 'Bakelite' and 'Beckolloid' are confusingly similar. In meaning they have little, if any, significance and therefore similarity in meaning is of little or no importance. On the other hand, in sound the two words strike me as being very much the same. They have the same number of syllables and when pronounced in the perfectly normal way the only difference between the marks is found to reside in the suffixes. For all other practical purposes, so far as sound is concerned, the remaining portions of the marks might as well be identical. Even the suffixes comprise a single

syllable beginning with the same letter, namely, 'L.' For this reason and in view of the similarity in appearance of the marks I am of the opinion that they are confusingly similar."

In view of our holding in Patent Appeal No. 3816, supra, it is unnecessary for us to discuss the issue presented further than is indicated by our approval of the above-quoted part of the Commissioner's decision. We think that the Commissioner arrived at the right result for the right reasons and his decision is affirmed.

#### Patent Appeal No. 3822—Opposition No. 12,582.

█ This is the seventh of a series of appeals from the decision of the Commissioner of Patents relating to opposition or cancellation proceedings which involve different marks of the parties to this litigation.

In the instant case the Commissioner of Patents reversed the decision of the Examiner of Interferences which dismissed opposer-appellee's notice of opposition and adjudged that the applicant-appellant was entitled to the registration of the mark involved.

The mark of applicant-appellant, Beck, Koller & Co., Inc., which the Commissioner held not entitled to registration, was the notation "Beckolloid," used, according to the application, for "synthetic resins, plastic synthetic resins and ester gums in Class 6, Chemicals, Medicines and Pharmaceutical Preparations." It was proposed to change the description to read: "soluble synthetic varnish and lacquer resins and ester gums."

The opposer-appellee relies upon its registered mark "Bakelite" No. 75,266, of September 14, 1909, for "condensation products of phenol and formaldehyde, in Class 6, Chemicals, medicines, and pharmaceutical preparations."

The case in the Patent Office turned on the question as to whether or not the terms "Beckolloid" and "Bakelite" were sufficiently similar as to lead to confusion when used upon goods of the same descriptive properties. The question of the same descriptive properties was not passed upon by the Examiner of Interferences and the Commissioner relied upon his reasons set out in opposition No. 12,545, patent appeal No. 3816. Since his reasons have been fully set out above, it is not necessary to discuss them here.

We agree with the Commissioner that the goods of the respective parties have the same descriptive properties and that the marks are confusingly similar and his decision is affirmed.

#### Patent Appeal No. 3823—Opposition No. 12,584.

█ This is the eighth of a series of appeals by Beck, Koller & Co. from decisions of the Commissioner of Patents involving trade-mark oppositions or cancellation proceedings in connection with various marks used by the respective parties.

This is an opposition proceeding instituted by the Bakelite Corporation, the opposer-appellee, challenging the right to registration by the applicant-appellant of the trade-mark "Beck-O-Lac." According to the application, it is used on "dry, paste and ready mixed paints, varnishes and lacquers, in Class 16, Paints and Painters' Materials." It is proposed to amend the description to read: "solutions of soluble synthetic resins in oils and mineral spirits for use in the manufacture of paints, varnishes, and lacquers, but excluding paints, varnishes, lacquers, and like finished products."

The trade-mark relied upon by the Bakelite Corporation in this opposition proceeding is the mark "Bakelite," registration No. 210,522, of March 16, 1926, for "Paint Enamels, Lacquers, and Varnishes, in Class 16, Paints and painters' materials."

As in the prior opposition case, Patent Appeal No. 3822, the Examiner of Interferences concluded that the differences in the marks predominated over the similarities to such an extent that there was no likelihood of confusion whether the use of applicant-appellant's mark was as stated in the application or as proposed to be amended.

The Commissioner of Patents, in reversing the decision of the Examiner of Interferences and in holding that the applicant-appellant was not entitled to registration, said:

"It satisfactorily appears that the opposer has used the notation 'Bakelite' in trade on a phenol resin varnish as of a date long prior to any claimed by the applicant for use of the notation 'Beck-O-Lac' on the goods stated. For substantially the reasons set forth in my decision today in the related Oppositions Nos. 12,545 and 12,581 the goods of the parties are held to possess the same descriptive proper-

tics. It is further held that the opposer has the right to oppose, whether the goods of the applicant be those described in the application as published or in the proposed amendment filed February 8, 1933, wherein it was proposed to change the description of the goods to read—'solutions of soluble synthetic resins in oils and mineral spirits for use in the manufacture of paints, varnishes, and lacquers, but excluding paints, varnishes, lacquers and like finished products—.'

"Furthermore, for substantially the same reasons set forth in my decision of even date in Cancellation No. 2592, in which the marks involved are 'Bakelite' and 'Beckolloid,' it is believed that the notations in the case at bar, namely: 'Bakelite' and 'Beck-O-Lac,' are confusingly similar. They have the same number of syllables and when pronounced in the normal way the only substantial difference between the marks is found to reside in the suffixes. Even these comprise a single syllable beginning with the same letter, namely: 'L,' and when pronounced sound somewhat alike."

We think the issues in this case as to the goods being of the same descriptive properties is controlled by our decision in patent appeal No. 3816, supra, and we agree with the Commissioner that "Bakelite" and "Beck-O-Lac" resemble each other so closely that there would be probability of confusion if they were concurrently used upon goods of the same descriptive properties, and that the mark "Beck-O-Lac" therefore should not be registered, and his decision is affirmed.

Patent Appeal No. 3824—Opposition No. 12,581.

This is the ninth and last of a series of appeals by Beck, Koller & Co., Inc., in which the Bakelite Corporation is the appellee, from the decision of the Commissioner of Patents, in either opposition or cancellation proceedings. In the instant opposition proceeding, the applicant-appellant sought to register the trade-mark "Beck-O-Lac" and in the application stated that it was to be used on "synthetic resins, in Class 6, Chemicals, Medicines and Pharmaceutical Preparations." Amendment was later offered to make the application read for "soluble synthetic varnish and lacquer resins."

The trade-mark "Bakelite," No. 75,266, of September 14, 1909, which formed the basis of the opposition by the opposer-appellee, was registered for use on "condensation products of phenol and formaldehyde, in Class 6, Chemicals, medicines, and pharmaceutical preparations."

The Examiner of Interferences concluded that the goods were of the same descriptive properties but that the marks "Beck-O-Lac" and "Bakelite" were so dissimilar that their concurrent use would not result in confusion, and he dismissed the notice of opposition and adjudged that the applicant was entitled to registration.

Upon appeal to the Commissioner, he too found that the goods of the parties possessed the same descriptive properties and stated that the sole question was whether the notations "Beck-O-Lac" and "Bakelite" were confusingly similar. He then referred to his decision in opposition No. 12,-584, patent appeal No. 3823, in which decision he had held that the marks were confusingly similar and upon these findings reversed the decision of the Examiner of Interferences.

In view of our holding in patent appeals Nos. 3816 and 3823, it is not necessary for us to discuss the issue of this case. We agree with the decision of the Commissioner of Patents and the same is affirmed.

Agreeable to the above holdings, the decisions of the Commissioner of Patents in patent appeals 3816 to 3824, inclusive, are affirmed.

Affirmed.