## ENGLANDER v. CONTINENTAL DISTILLING CO.

Patent Appeal No. 3949.

Court of Customs and Patent Appeals.

April 4, 1938.

Louis B. Englander, of Newark, N. J., for appellant.

Leonard L. Kalish, of Philadelphia, Pa., for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal in a trade-mark opposition proceeding from the decision of the Commissioner of Patents affirming the decision of the Examiner of Interferences sustaining appellee's notice of opposition and holding that appellant was not entitled to the registration of a composite trade-mark comprising the words "Silver Bar" in association with the picture of a man in "apparently medieval times costume holding a shield," for use on whiskey, gin, rum, brandy, and alcoholic cordials.

In its application, appellant stated that it had used its trade-mark on its goods since January 12, 1934.

Although the words "Silver Bar" in appellant's mark are associated with a pictorial design, they are the dominant feature of the mark.

Appellee's mark, consisting of the words "Silver Shield," for use on "Whiskey, Gin, Rum, Rye, Brandy, and Cordials," was registered March 13, 1934, No. 311,048, on an application filed November 22, 1933.

It will be observed that the goods of the parties are substantially the same.

In opposing the registration of appellant's trade-mark, appellee relied upon the confusion in trade clause of section 5 of the Trade-Mark Act of February 20, 1905, as amended, 15 U.S.C.A. § 85.

Evidence was introduced by appellee for the purpose of establishing that it used its mark prior to the first use by appellant of its mark, and that the marks of the parties were confusingly similar.

The time for the taking of testimony in the case having expired, counsel for appellant, on July 24, 1936, filed an application (naming therein the witnesses he desired to interrogate) for permission to take testimony for the purpose of establishing appellant's good faith in the adoption and use of its mark; that appellee had not, in fact, used its trade-mark on its goods on November 17, 1933, the date of alleged first use in appellee's application for the registration of its mark; and that appellee "fraudulently procured the certificate of registration for 'Silver Shield.' "

In explanation of the delay in taking the testimony of the witnesses named in the application, counsel for appellant stated that it had been his desire to "first examine the president of the" appellee company, whose residence address he had theretofore been unable to ascertain. Those facts, it was stated, were set forth in previous motions. (No such motions appear of record.)

On July 29, 1936, the Examiner of Interferences, in denying the application, among other things, said:

"The record discloses that on March 30, 1936, the examiner denied a motion filed March 23, 1936, by the applicant, for an extension of time for taking testimony, by reason of noncompliance of the latter with Rule 154(d). In this last mentioned motion the applicant indicated a desire to take testimony of officers of the opposer corporation, but stated that he was then unable to locate them.

"In the motion filed July 24, 1936, one of the applicant's proposed witnesses is identified as the president of the opposer corporation, it being indicated therein that the applicant has now ascertained the location of this person. *However, the motion fails to disclose the steps taken by applicant to locate said witness or the dates when efforts to this end were made.*

"The motion is accordingly deemed not yet to comply with all the provisions of Patent Rule 154(d) and it is therefore denied." (Italics ours.)

It does not appear from appellant's application to take testimony, and the affidavit in support thereof, that, for the reasons stated by the examiner, he had fully complied with rule 154(d) of the Rules of Practice in the United States Patent Office. Accordingly, appellant's application was properly rejected.

The validity of a registered mark cannot be challenged in an opposition proceeding. Sharp & Dohme v. Parke, Davis & Co., 37 F.2d 960, 17 C.C.P.A., Patents, 842; American Fruit Growers v. Michigan Fruit Growers, 38 F.2d 696, 17 C.C.P.A., Patents, 906; California Packing Corp. v. Tillman & Bendel, Inc., 40 F.2d 108, 17 C.C.P.A., Patents, 1048; Standard Oil Co., New Jersey v. Clarence W. Epley, 40 F.2d 997, 17 C.C.P.A., Patents, 1224; H. G. MacEachen v. Tar Products Corporation, 41 F.2d 295, 17 C.C.P.A., Patents, 1264; Revere Sugar Refinery v. Joseph G. Salvato, 48 F.2d 400, 18 C.C.P.A., Patents, 1121; George H. Ruth Candy Co., Inc. v. Curtiss Candy Co., 49 F.2d 1033, 18 C.C.P.A., Patents, 1471; E. Daltroff & Cie v. V. Vivaudou, Inc., 53 F.2d 536, 19 C.C.P.A., Patents, 715; Richard Hellman, Inc., v. Oakford & Fahnestock, 54 F.2d 423, 19 C.C.P.A., Patents, 816; Walgreen Co. v. Godefroy Manufacturing Co., 58 F.2d 457, 19 C.C.P.A., Patents, 1150; Breakstone Bros., Inc. v. Gerber & Co., Inc., 58 F.2d 419, 19 C.C.P.A., Patents, 1224; Aktiengesellschaft Für Feinmechanik, Vormals Jetter & Scheerer v. Kny-Scheerer Corp., 68 F.2d 974, 21 C.C.P.A., Patents, 877; Ely & Walker Dry Goods Co. v. Sears, Roebuck & Co., 90 F.2d 257, 24 C.C.P.A., Patents, 1244.

In those cases, applicants for registrations were attempting to attack the validity of registered marks of opposers. In some instances, it was claimed that the registrations were invalid because of prior registrations of such or similar marks on goods of the same descriptive properties.

In the case of Walgreen Co. v. Godefroy Manufacturing Co., supra, the validity of a registered mark was questioned on the ground of descriptiveness. It was held that that issue could not be raised in an opposition proceeding.

In the Ely & Walker Dry Goods Co. Case, supra, the applicant for registration

alleged that the opposer's registered mark was invalid because the application for registration was not in accordance with the requirements of the Trade-Mark Act, supra; that the opposer was not using the registered mark as a trade-mark; and that, for other reasons, the registration was invalid. We there again held that the validity of a registered mark could not be attacked in an opposition proceeding.

It was pointed out in our decisions in some of those cases that the Congress specially provided, in section 13 of the Trade-Mark Act, supra, 15 U.S.C.A. § 93, for proceedings for the cancellation of a trade-mark registration by one who deemed himself injured by such registration, and that, if an interested party desired to question the validity of a trade-mark registration, he should proceed in accordance with the provisions of that section.

We have also held in several cases, some of which are hereinbefore cited, that, in opposition proceedings, the Patent Office tribunals are not limited to the precise issues presented in notices of opposition, but, on the contrary, by virtue of the provisions of section 7 of the Trade-Mark Act, supra, 15 U.S.C.A. § 87, may dispose of any question relating to a proposed registration that might properly be considered in an ex parte proceeding, and that, if an applicant's mark be identical with a registered mark owned by another, or confusingly similar thereto, and the goods of the applicant are of the same descriptive properties as those of the registrant, the application for registration should be denied, regardless of the issues raised by the notice of opposition. Furthermore, the Congress has provided in section 7, supra, for an interference proceeding, under proper circumstances, between applicants for registration, and between an applicant and a registrant, to determine the question of priority of use of their marks. Accordingly, testimony relating to the question of the validity of appellee's registration, which counsel for appellant desired to submit, is wholly irrelevant to the issues in this case.

It appears from the decision of the Examiner of Interferences that counsel for appellant contended in his brief on final hearing before the Examiner that appellee's notice of opposition was invalid, because, it was argued, it was not accompanied by evidence of the authority of the vice president of the appellee company to file the notice of opposition. No motion of any kind raising that issue was filed by counsel for appellant, nor was there anything in the answer of appellant to indicate that that question would be raised.

In holding that the notice of opposition was sufficient, the Examiner of Interferences said: "The applicant contends that no valid notice of opposition has been filed herein by reason of the lack of proof of the authority of the vice president of the opposer corporation to sign this notice of opposition. The Office has long recognized that a corporate officer possesses presumptive authority to act on behalf of the corporation in a proceeding of this character. In the absence of a showing sufficient to rebut such presumption this contention is not sustained. Furthermore, this defense is not raised in any pleading filed by the applicant and it therefore may not properly be now asserted."

The Examiner's holding in that respect was, on appeal, affirmed by the Commissioner of Patents. We assume, therefore, that it has long been the practice of the Patent Office to consider as presumptively valid the verification of a corporation's notice of opposition made by one of its executive officers.

Counsel for appellant insists, however, that the notice of opposition in the instant case is invalid because it was not accompanied by a resolution by the Board of Directors of appellee's company authorizing the vice president to sign, verify, and file it. In support of his contention, counsel cites the case of Bass, Ratcliff & Gretton, Lim., v. Hartmann Brewing Company, 1906 C.D. 143, wherein it was held by the Commissioner of Patents, on the authority of his decision in the case of Martin v. Martin & Bowne Company, 1905 C.D. 490, that a notice of opposition should be signed and verified by an opposer, and not by its attorney.

In the Bass, Ratcliff & Gretton Case, supra, the Commissioner called attention to the fact that his decision in the Martin Case, supra, had been affirmed by the Court of Appeals of the District of Columbia (27 App.D.C. 59, 7 Ann.Cas. 47), and said:

"It is urged that the requirement for the personal oath of the one opposing cannot apply and was not intended to apply to a corporation.

"In regard to this matter it may be said that a corporation can act by its executive

officers when it is necessary, and in the present case it is thought that the oath should be furnished by such an officer, *with a statement of his authority to act as the agent of the corporation."* (Italics ours.)

The issue before the Commissioner in that case was whether an attorney, acting in that capacity only, was authorized by the statute to sign and verify a notice of opposition for the corporation which he represented, not whether an executive officer of a corporation was authorized to sign and verify such notice. Accordingly, the statement in his decision that a notice of opposition by a corporation should not only be signed and verified by an executive officer, but should be accompanied by "a statement of his authority to act as the agent of the corporation," was obiter dictum.

In the Martin Case, supra, the Court of Appeals of the District of Columbia, in affirming the decision of the Commissioner of Patents, expressly reserved opinion as to the right of an *agent* of a corporation to sign and verify a notice of opposition. We quote from the court's decision in that case:

"In some instances, where the statute required an oath to be made by a party, it has been held that in case of a corporation the oath might be made by its duly authorized agent, who had personal knowledge of the facts. Of this nature is the single authority relied on by the appellant. Re Chequasset Lumber Co. [D.C.], 112 F. 56, 58. See also, Wheeler & Wilson Mfg. Co. v. Lawson [57 Wis. 400, 15 N.W. 398] supra. The reason on which these decisions rest is that, while the corporation, as the party to the proceeding, is entitled to the benefit of the statute, it can only act by agent; and, hence, that the power to obtain the conferred benefit through the oath of its agent must be inferred.

*"The conclusion seems to be a reasonable one,* but the question is not involved in this case, and we express no opinion in respect of it." (Italics ours.)

We have examined the decisions in the other cases cited by counsel for appellant, and find that they have no bearing on the issue under discussion.

At the time of the oral arguments in this court, counsel for appellant frankly stated that, other than the dictum in the Bass, Ratcliff & Gretton Case, supra, he could find no authority in support of his contentions.

Section 6 of the Trade-Mark Act, as amended, supra, 15 U.S.C.A. § 86, provides that a notice of opposition "shall be verified by the person filing the same," and that, although an "opposition may be filed by a duly authorized attorney," it "shall be null and void unless verified by the opposer."

■ The notice of opposition in the instant case was signed and verified by the *vice president* of the appellee company, and, in the absence of evidence to the contrary, it will be presumed that he was such vice president and had authority to act in the premises. Sun Printing & Publishing Ass'n v. Moore, 183 U.S. 642, 651, 22 S.Ct. 240, 46 L.Ed. 366. Furthermore, according to the decision of the Examiner of Interferences, the Patent Office has long recognized, in the absence of evidence to the contrary, that a "corporate officer possesses presumptive authority" to act on behalf of a corporation in opposition proceedings, and we find nothing in the statute to warrant a holding that the Patent Office practice in this respect is contrary to law.

The authority of the vice president of the appellee company to verify the notice of opposition in the instant case not being challenged by any evidence of record, appellant's assignment of error in this respect is not well founded.

■■ The real issue in the case is whether the tribunals of the Patent Office were right in holding that the marks of the respective parties were confusingly similar.

It is argued by counsel for appellee that the shield in appellant's composite mark is silver in color. (In appellant's application, the shield appears white, although it might have the appearance of silver when the mark is in actual use.)

In his decision, the Commissioner made the following appropriate observation: "While the design must, of course, be considered as a part of the composite mark, the fact remains, as pointed out by the examiner of interferences, 'that purchasers would recognize and call for the applicant's goods by the only spoken symbol included in the mark affixed thereto, namely, the notation "Silver Bar."' As purchasers of the goods here involved frequently order by the drink, and have no opportunity to see the labels, this becomes a matter of considerable importance in determining the probability of confusion."

It is true, as argued by counsel for appellant, that the word "bar" in appellant's mark differs substantially from the word "shield" in appellee's mark. However, the

marks should be considered. as a whole, and we are of opinion that, when so .considered, the differences between the words "bar" and "shield" are not sufficient to warrant a holding that the marks "Silver Bar" and "Silver Shield" are not confusingly similar when used on alcoholic beverages, such as whiskey, gin, etc.

It is true, as stated by the Commissioner in his decision, that purchasers might not always have the opportunity of seeing either of the trade-marks, and that thus confusion might be accentuated. This is particularly true where the goods of the parties are purchased by the drink rather than by the bottle. However, we do not base our decision entirely upon that proposition. We think the concurrent use of the involved marks on the goods of the respective parties would be likely to cause confusion, whether the goods of the parties are purchased by the drink or otherwise, and that appellant's mark is not entitled to registration.

Counsel for appellant insists, however, that confusion in trade is improbable in view of the failure of appellee to establish the existence of actual confusion.

We have frequently held that proof of actual confusion is not necessary in cases of this character. E-Z Mills, Inc. v. Martin Brothers Company, 95 F.2d 269, 25 C.C.P.A., Patents, ——, decided March 28, 1938.

The decision of the Commissioner of Patents is affirmed.

Affirmed.