### TAYLOR INSTRUMENT COMPANIES v. FEE & STEMWEDEL, Inc.

No. 7799.

Circuit Court of Appeals, Seventh Circuit.

June 30, 1942.

Lynn A. Williams and Warren C. Horton, both of Chicago, Ill., and D. Clyde Jones, of Rochester, N. Y., for appellant.

Fred Gerlach and Axel A. Hofgren, both of Chicago, Ill., for appellee.

Before SPARKS and MINTON, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

In this action appellant charged appellee with unfair competition in the manufacture and sale of barometers, hygrometers, and thermometers. It also charged appellee with infringement of appellant's trademarks and design patents, and with copying appellant's advertising material and copyrighted catalogs. Appellee admitted jurisdiction of the District Court but denied that it was guilty of any act of infringement or unfair competition, and further denied that the amount involved exceeded $3,000.

The court found the facts specially and rendered its conclusions of law thereon favorable to the defendant, and entered a decree dismissing the cause of action on the merits. After finding that it had jurisdiction under the patent laws, and by reason of the diversity of citizenship of the parties, it substantially found the following facts which are supported by substantial evidence: Appellant is the owner of design patent to Teague, No. 89,-619, issued April 18, 1933, for seven years for a thermometer; design patent No. 93,-969, to Brown, issued December 4, 1934, for a term of fourteen years, for a thermometer; and a design patent to Brown, No. 100,362, issued July 14, 1936, for seven years, for an instrument case.

Commenting on the charge that the Teague patent was infringed by appellee's designs referred to as exhibits 15 and 17, the court found that appellant, to support its claim of novelty for the Teague patent, relied upon minute differences, such as slightly narrowing clasps for holding the glass tube to the scale, a slight change in the shape of the side flanges which are used for stiffening the scale, and a slight change in the bulb guard. Thermometers with flanged sides, clasps, handles and bulb guards having substantially the same appearance are old in the art. The Teague patent is neither novel, nor ornamental, nor does it involve invention. Its single claim, for an ornamental design for a thermometer as shown, is entitled only to the narrowest construction. Appellee's thermometers, as shown by the exhibits referred to, are widely different in appearance from the design claimed in this

patent. They have a distinctively different handle and are otherwise dissimilar.

With respect to the design patent No. 93,969 to Brown, it is charged that this patent is infringed by appellant's exhibit 19, which is one of appellee's products. This patent discloses a thermometer used for taking the internal temperatures of meat during roasting. It shows a thermometer consisting of a tube and scale plate of modified octagonal contour at the upper end of the tube. Such thermometers were shown to be old by United States patent No. 1,538,042 to Hurlburt; United States patent No. 1,983,166 to Chaney; United States patent No. 1,037,210 to Curphey and Poince, and by a publication, Bulletin No. 254 of the University of Minnesota, dated April, 1929.

Thermometers comprising glass tubes and scale plates or targets of rectangular contour secured to the upper end thereof are also old, as shown by the Chaney patent No. 1,983,166, and other exhibits specifically referred to in the finding. The claim in suit is for an ornamental design for a thermometer as shown, and is entitled to only the narrowest construction. The design exhibited in this patent is neither novel nor ornamental, and does not involve invention. Appellee's accused thermometer (exhibit 19) has a rectangular scale plate with rounded corners, is cylindrically convex or bowed and is provided with a sliding pointer. It does not resemble in appearance the design claimed in this Brown patent.

It is contended by appellant that appellee's instrument case, which is exemplified by exhibit 21, infringes Brown's design patent No. 100,362. The patent discloses a case which is generally rectangular and has a single opening in its face extending from end to end, a single glass plate in that opening, and a base with a series of protruding horizontal ribs or bars extending from the central portion of the front to the sides and around the ends of the case. Appellee's case has a front subdivided into a large, substantially square central opening, and two relatively narrow and vertically elongated openings at the sides. The side openings are separated from the central opening by vertical bars. It has horizontal slots in the front of the case below side openings and has a narrow inset base. Brown's claim is for an ornamental design for an instrument case as shown, and it is entitled only to the narrowest construction. In design and appearance appellee's case differs substantially from the design shown in the patent. If the claim is given a broad construction, as contended by appellant, it is not for a design which is ornamental in the sense of the patent laws and the creation of the design did not require the exercise of inventive genius.

It is further contended by appellant that its copyrights for its 1937 catalog were infringed by appellee's 1940 catalog. The District Court found that appellant's bill of particulars specified that the cloud and sky background appearing throughout appellee's 1939–1940 catalog are charged to infringe appellant's copyrights. The court found that appellant used black cloud effects for a background, and this was used only on four pages of its catalog for 1937. The cloud effects used by appellee in its 1940 catalog were blue in coloring and otherwise dissimilar. The two catalogs do not look alike. Appellee's catalog is characterized by a blue color and appellant's catalog is characterized by red and black. The District Court was of the opinion that appellant could not acquire any exclusive copyright to backgrounds with cloud effects.

Appellant further charged in its bill of particulars that appellee by the use of the mark "Airguide," infringed appellant's rights under registration No. 174,180 for the trademark "Stormoguide" used by appellant on some models of barometers; registration No. 252,957 for the mark "Thermoguide" used by appellant on some models of thermometers; and registration No. 280,982 for the mark "Humidiguide" used by appellant on some models of hygrometers.

The court found that appellant's instruments are generally known and advertised and designated as "Taylor," and that name has been the dominant and primary indicium of the origin of its goods. Appellant has used "Stormoguide," "Thermoguide," and "Humidiguide" in connection with only some of its models of barometers, thermometers and hygrometers, respectively. The District Court was of opinion that the word "Guide" was merely descriptive of the function of instruments for indicating temperature, pressure and moisture or condition of air, and that appellant acquired no exclusive rights to the use in trade of the word "Guide" in connection with thermometers, hygrometers and

barometers. The court further found that appellee commenced to use the word "Airguide" in 1932, and has continuously used it since then on a line of instruments, and appellant had knowledge of appellee's use of that word since 1932. In June 1933, appellant filed in the United States patent office notice of opposition to appellee's application for registration of "Airguide." The patent office dismissed the opposition and held that the suffix "Guide" was a common word used merely as descriptive of the function of the instrument, and that appellant had no exclusive rights to the word "Guide" and that word was not a dominant feature of "Stormoguide," "Thermoguide" and "Humidiguide." No appeal was taken from that decision and it became final.

The court further found that appellant made no complaint to appellee against the use of the word "Airguide" prior to the filing of this suit on December 27, 1939. During that period appellee increased its line of instruments and expanded its business and used the mark "Airguide" thereon. It has also advertised its "Airguide" products and generally included its corporate name "Fee & Stemwedel, Inc." upon its products and boxes. Appellant does not claim that any actual confusion between the goods of the parties has occurred, and it offered no evidence to that effect. It has never used the word "Airguide" on its products and never acquired any exclusive rights to the use of the word "Guide." The court further found there was no intent on the part of the appellee to sell its instruments as those of appellant or to conceal the fact that its products were its own, and it concluded that appellee has the right to use the word "Airguide" as a designation for its instruments.

Appellant also claims that appellee's use of the names "Eton," "Kent," "Oxford" and "York" for designating the different models of instruments is unfair because they are English in character or suggestion, and to that extent follow or are similar to the names "Warwick," "Essex" and "Mayfair" which are used by appellant for designating its different models. The court found in this respect that the names "Eton" and "Kent" were adopted and used by appellee before appellant used any names of English character and suggestion, and that both parties used many other names not English in character and suggestion

for designating different models. The District Court concluded that appellant had acquired no exclusive rights to names merely because they were English in character and suggestion, and that appellee's use of names which are English in character and suggestion, but not the same as those used by appellant, does not constitute unfair trade.

Appellant further contends that the boxes used by appellee for its candy and deep frying thermometers are so similar to the boxes used by appellant as to constitute unfair competition on appellee's part. The court found that such similarity extended only to the colors yellow and red, and that otherwise the boxes were not at all similar. The court further noted that appellee's corporate name appears on the ends of its boxes, and that as early as September 1939, which was prior to the filing of the complaint, appellant adopted a box for its candy and deep frying thermometer with blue and black colors and a distinctively different color design. The court further found that the name "Taylor" on appellant's boxes constitutes the primary or predominant mark by which appellant's instruments were known and advertised. On its instruments and boxes, and on every page of appellant's 1937 catalog, appears the legend "Every Taylor instrument bears the Taylor name." The name "Taylor" as used by appellant, distinguishes its instruments from those of all its competitors. The red and yellow colors on the boxes used by it for its thermometers do not indicate origin, and the use of appellee's boxes, as stated, does not constitute unfair trade.

With respect to appellee's use in its catalog of descriptive matter entitled "sales helps," the District Court found that the matter complained of is descriptive of the helps or assistance rendered by appellee to dealers in the promotion of sales. It describes the material furnished and what is done by appellee to help the dealers in promoting sales. The catalogs are distributed to dealers and not to ultimate purchasers. From these facts the court concluded that appellee had the right to include in its catalogs statements with respect to sales helps and the inclusion thereof did not mislead dealers or produce confusion and does not constitute unfair trade.

Another feature complained of by appellant related to the similarity of appellee's guarantee tags to those used by ap-

pellant. The court found that in accordance with the custom of the trade, each of the parties attached guarantee tags to its respective instruments. It further found that the tags were different in shape; that the texts stated different guarantees for similar goods; that appellee's corporate name was printed on its tags; and that the similarity in color did not render them confusingly similar. Hence, it concluded that no one was likely to be confused by the tags, and appellee's use of its tags did not constitute unfair trade. Moreover, after the complaint was filed appellee changed the colors on its tags.

Another alleged misuse of words by appellee related to the word "Sharon" which appellant used as a name for one model of its instruments in August 1938. This name was not listed in appellant's 1937 catalog, but it appeared in a supplement issued in 1938. The court found that appellee had no knowledge of such use of "Sharon" by appellant, and commenced in July 1939 to use that word as a model name for a different type of instrument. When appellee learned of the use of "Sharon" by appellant some time after the complaint was filed, it ceased the use of such name and adopted the word "Ainslee" in lieu thereof.

Appellant further insisted that appellee was unfair in its printed instructions accompanying its meat thermometers, which in many respects are quite similar to those printed by appellant. The court found that these instructions used by appellee were merely descriptive of the manner in which the thermometer should be used in cooking, and contained condensed information essential to the proper cooking of meats. It further found that the data for these instructions was the result of experiments carried on and furnished to the public by the National Live Stock and Meat Board of Chicago long prior to any use by appellant. The court further found that the text in appellee's instructions for meat thermometers was not the same as that in appellant's. The similarity extended only to the directions for the use of the instruments derived from the data furnished by the Meat Board. The court concluded that appellant acquired no exclusive rights in these instructions, and they did not indicate the origin of appellant's goods, and that their use by appellee did not constitute unfair trade.

No proof of actual confusion was offered. Appellant gave no notice to appellee of any of the acts complained of as unfair, prior to filing its complaint. The court further found that the acts complained of considered either singly or as a course of conduct on the part of appellee, did not indicate an intent to appropriate the good will of appellant.

Appellee, through its advertising and marking of its goods in containers with its own name, did not intend to sell, and has not sold, its goods as those of appellant, and has avoided confusion, or likelihood of confusion in the trade. "Taylor" constitutes a distinctive and dominant name or mark which distinguished appellant's instruments from those of its competitors.

From all these facts, the court concluded that each of the first two patents referred to was invalid and not infringed. It held that the second Brown patent, if construed broadly, was invalid, and it further held that this patent was not infringed.

The court further held that appellant had acquired no exclusive rights to the use of "Guide" by reason of its use of "Stormoguide," "Thermoguide" and "Humidiguide"; that appellee's use of "Airguide" did not violate any trademark rights of appellant and did not constitute unfair trade; that appellee had not infringed, or violated the copyrights of appellant; and had not been guilty of unfair trade against appellant, and was entitled to a decree dismissing the action. The decree of dismissal was accordingly entered.

The record in this case is rather voluminous. It would serve no good purpose to enter into a detailed discussion of the evidence. We have studied the record with respect to every question raised. The findings are supported by substantial evidence and we think they are fair in view of all the circumstances.

Appellant more than once refers to the fact that the court adopted the findings tendered by appellee, thereby intimating, if not directly saying, that the court should have written its own findings. This is an old argument which is often resorted to by unsuccessful litigants. Each party, if he so desires, may present findings setting forth his theories and the evidence which he thinks support those

theories. It then becomes the duty of the court to select the findings which it thinks are correct. If all or any part thereof are wrong they of course should be rejected. They may be restated in other language if the court so desires, or they may be adopted as requested if the court so desires. If the court adopts them they become the court's findings regardless of who wrote them, and after that the only issue is their correctness, and we do not concern ourselves with their original authorship.

We think the present findings are correct and we are further of the opinion that the conclusions based thereon are sound. The decree is

Affirmed.