35 C.C.A. (Patents)

**COLUMBIA BROADCASTING SYSTEM, Inc., v. TECHNICOLOR MOTION PICTURE CORPORATION et al.**

**TECHNICOLOR MOTION PICTURE CORPORATON et al. v. COLUMBIA BROADCASTING SYSTEM, Inc.**

Patent Appeals Nos. 5365, 5366.

Court of Customs and Patent Appeals.

Jan. 27, 1948.

Rehearing Denied April 2, 1948.

Pennie, Edmonds, Morton & Barrows, of Washington, D. C. (Willis H. Taylor, Jr., of New York City, and C. M. Fisher, of Washington, D. C., of counsel), for Columbia Broadcasting System, Inc.

Roberts, Cushman & Grover, of Boston, Mass. (Charles S. Grover, of Boston, Mass., William M. Cushman, of Washington, D. C., and Richard F. Walker, of Boston, Mass., of counsel), for Technicolor Motion Picture Corp. et al.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

O'CONNELL, Associate Judge.

We have here appeals from decisions of the United States Commissioner of Patents, acting through the First Assistant Commissioner, in a trade-mark registration case, 69 USPQ 260. In one of the decisions an opposition involving two grounds was passed upon, and the other was a decision ex parte. Both were announced in a single opinion.

As will be observed from the caption, there are two appeals before us, but only one opinion is necessary. As is hereinafter stated, Technicolor Motion Picture Corporation was not in fact a party appellant in appeal No. 5366 and in that respect the caption is somewhat misleading.

On February 29, 1944, Columbia Broadcasting System, Inc., hereinafter usually referred to as C.B.S., filed in the Patent Office an application for registration, under the Trade-Mark Registration Act of February 20, 1905, 15 U.S.C.A. § 81 et seq., of the word "Telecolor," shown printed in capital letters with the use of plain type, "for radio and television transmitting and receiving apparatus and component parts therefor," use of the mark being alleged "since February 11, 1944."

The application was opposed by Technicolor Motion Picture Corporation and Technicolor, Inc. It appears that the latter is a holding company which owns all the stock of the former but is not itself engaged in either the manufacture or sale of any products. The two companies joined in a single action of opposition but, it is stated, paid two filing fees in the Patent Office. A question was raised by the Examiner of Trade-Mark Interferences with respect to there being two parties in one action under the facts relating to the interest of the par-

ties shown in this case, but in view of our conclusion that need not be discussed here.

The opposition was predicated upon two grounds, viz.:

First, it was alleged that "Telecolor" so closely simulates the full name of Technicolor, Inc., and, what was asserted to be, the "distinctive part" of the name of Technicolor Motion Picture Corporation, that it should be denied registration under that part of the third proviso of section 5 of the Act, as amended, which reads:

" * * * Provided, That no mark which consists merely in the name of * * * [a] corporation * * * shall be registered under the terms of this Act."

The Examiner of Trade-Mark Interferences dismissed the opposition of Technicolor, Inc., based on the "name clause," but sustained the opposition of Technicolor Motion Picture Corporation on that ground. The First Assistant Commissioner reversed the latter holding, and, so far as the "name clause" was concerned, dismissed the opposition of both the opposing parties.

Technicolor, Inc., appealed from the First Assistant Commissioner's decision on this phase of the controversy, but Technicolor Motion Picture Corporation took no appeal. That issue was involved generally before us in appeal No. 5366, which is in fact improperly styled, since Technicolor, Inc., is the only appellant.

Second, it was alleged, particularly by Technicolor Motion Picture Corporation which plead ownership of two registrations of the term "Technicolor" used upon "motion picture films" since long prior to the date of use claimed by C.B.S. for "Telecolor" on television apparatus, that use by the latter party of the latter mark in the manner designed would be likely to cause confusion or mistake in the mind of the public or to deceive purchasers, especially as to origin. It was contended, therefore, that the registration sought by C.B.S. should be denied.

The Examiner of Trade-Mark Interferences sustained the opposition under the confusion in trade clause and the First Assistant Commissioner affirmed in that respect, whereupon C.B.S. took the appeal which became appeal No. 5365 on our calendar.

The questions raised in the opposition proceedings were interesting and they have received the attention of the court, much study having been given them, but, as we view the situation here, it is not only unnecessary to pass upon them, but any decision of them would be obiter.

▮ The Examiner of Trade-Mark Interferences and the First Assistant Commissioner correctly held it to be their duty to consider ex parte the right of C.B.S. to the registration sought, entirely independently of the contentions of the opposers, under the statute as construed in various decisions of this court. See Burmel Handkerchief Corp. v. Cluett, Peabody & Co., Inc., 29 C.C.P.A., Patents, 1024, 127 F.2d 318, and cases therein cited.

▮ They did this with the result that they concurred in the view that the registration should be denied because upon the record "Telecolor" was shown to be either a descriptive or a misdescriptive term with respect to television apparatus. This conclusion was based upon testimony given largely on direct examination by a witness whom C.B.S. itself called and who seemed well qualified to speak of the matters concerning which he testified.

The decision of the Examiner of Trade-Mark Interferences on this phase of the matter is brief and pointed. He quotes all the testimony bearing upon the issue involved ex parte and we here reproduce it, omitting the record page references:

"Aside from the right of opposer to intervene herein on the grounds pleaded in the notice of opposition, it remains the duty of the examiner to consider applicant's right of registration ex parte. Burmel Handkerchief Corp. v. Cluett, Peabody & Co., Inc., 127 F.2d 318, 29 C.C.P.A., Patents, 1024, 542 O.G. 395.

"In the testimony of Larsen, witness for applicant, it was developed that the word 'Tele' is a common term employed indicating 'television.' Indeed, the witness was quite insistent as to this fact as indicated by the following testimony:

"Q57. Was there any short abbreviation that was used when discussing television, and if so, will you state what that is? A. As far back as I recall, that is in the early development days, which goes back, in my particular case, to 1936, the common term we always employed in connection with television was the word 'Tele.'

"Q58. That is, it was widely known by the public, in view of your acquaintance and work in the industry? A. It is a very common term, used in technical discussions and used by the public as well.

\*    \*    \*    \*    \*    \*

"Q61. And would you say that from your knowledge of the public's reaction to television announcements, that the public itself has begun to refer to affairs relating to television by the combining term 'Tele'? A. Yes, sir.

"Q62. You have lectured to lay audiences, have you not, Mr. Larsen? A. I have, sir.

"Q63. And in the course of questioning and conversation amongst those lay attending, have you heard them use the word 'Tele'? A. Very often.

"Q64. Among the advertisers, for example—and first I will ask you, Mr. Larsen, have you had contact with advertising firms that may have interest in television? A. I have, sir.

"Q65. And do they refer to the television art as 'Tele'? A. They do, sir.

\*    \*    \*    \*    \*    \*

"XQ180. You say you are familiar with the personnel in the television business? A. I am, sir.

"XQ181. And with many people interested in it? A. I am.

"XQ182. Advertising concerns, I believe you mentioned some of them? A. I am, yes, sir.

"XQ183. And a portion of the lay public? A. I am, sir.

"XQ184. And to them you said 'tele', just the four letters 'tele' means television? A. It is so used, yes, sir. I believe you will find that in the daily periodicals, weekly publications, monthly publications, the word 'television' is very seldom used and it is always abbreviated to the word 'tele' by

such papers as the Herald, Variety and others.

"XQ185. Of course 'color' just means color to all of the general public? A. That is correct, sir.

"XQ186. And it follows, then, that combining the two 'tele color' is merely descriptive of broadcasting television in color?

"The last question quoted was objected to by counsel for applicant and the witness was instructed not to answer the question and no answer was given.

"It would seem from this testimony that 'Tele' is a mere abbreviation of 'television' and is so understood by a great portion of the public. Under such circumstances applicant's notation 'Telecolor' means no more than television color. In cases where color pictures are transmitted and received over apparatus bearing this designation, the mark would be merely descriptive of a characteristic of the goods and if only black and white pictures are transmitted and received it would be misdescriptive of such character. Under these circumstances the examiner is of the opinion that the applicant is not entitled to registration under the Act of 1905 of such a descriptive or misdescriptive term."

The First Assistant Commissioner said:

"The denial of registration to applicant, ex parte, is based upon the proposition that 'Telecolor' means nothing more than television color. The testimony conclusively shows that to those connected with the industry, 'tele' is a recognized abbreviation of 'television,' and as such is widely used. If those in the industry give it that meaning, it must be so defined for trade-mark purposes. In re Richfield Oil Co., 88 F.2d 499, 24 C.C.P.A., Patents, 996. As applied to color television apparatus, 'Telecolor' is thus plainly descriptive of a quality or characteristic of the goods. If applied to black and white television apparatus, it is downright deceptive. On either score, the examiner of interferences properly refused registration."

The testimony is clear, unequivocal and uncontradicted as to the art of television in which apparatus for transmitting and receiving are indispensable parts. There is nothing to justify us in disregarding it.

"Tele" is a dictionary term which is defined in substantially the same manner by all the lexicographers. We quote that given by Webster's New International Dictionary, Second Edition, 1932:

"Tele— * * * tel—. Combining form from Greek * * * *far, far off;* as in *tele*graph, *tele*pathy, *tele*phone, etc.;—often used in naming or designating devices or instruments, usually electrical, which control or direct the action of distant apparatus (as in telecontrol, a device for regulating different electrical circuits at a distance by means of radiotelegraphy, or which have a distant recording apparatus (as in teleanemograph, telebarograph, telebarometer, etc.).''

Even if the word be descriptive to only those skilled in the television art, registration would be deniable under the decision cited by the First Assistant Commissioner, and those decisions which it cites.

We make no holding with respect to the issues presented in the opposition proceeding, but the ex parte decision of the commissioner is affirmed.

Affirmed.

BLAND, Associate Judge, sat during the argument of this case but resigned before the opinion was prepared.