38 C.C.P.A.(Patents)

### IPPOLITO v. NANCY ANN DRESSED DOLLS.

Patent Appeal No. 5694.

United States Court of Customs and Patent Appeals.

June 30, 1950.

Rehearing Denied Sept. 29, 1950.

J. Calvin Brown, Los Angeles, Cal. (Francis D. Thomas and Harry W. F. Glemser, Washington, D. C., of counsel), for appellant.

Hugh N. Orr, San Francisco, Cal., for appellee.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, and JOHNSON, Judges.

JACKSON, Judge.

This is an appeal in a trade-mark opposition proceeding from a decision of the Commissioner of Patents, 77 USPQ 545, affirming that of the Examiner of Interferences sustaining a notice of opposition filed by appellee against the registration by

appellant of the trade-mark "Nursery Rhymes," as applied to dressed dolls for children, under the Trade-Mark Act of 1905, 33 Stat. 724, as amended.

It appears that appellant, doing business under the fictitious name and style of Hollywood Doll Manufacturing Company of Glendale, California, filed an application for registration of his mark on March 25, 1945, alleging continuous use, as applied to said goods, since November, 1944.

On January 2, 1946, appellee filed its notice of opposition. It appears to be based upon the confusion in trade clause of Section 5 of the Trade-Mark Act of 1905.

Appellee has its principal place of business in San Francisco, California, and manufactures, sells and distributes dressed dolls and doll clothes. It is the owner of the following registered marks, all applied to dressed dolls:

|  | Registration No. | Registration Date |
| --- | --- | --- |
| "Storybook" | 389,114 | July 22, 1941 |
| "Polly Put Kettle On" | 395,453 | May 26, 1942 |
| "Little Bo Peep" | 395,454 | May 26, 1942 |
| "To Market" | 403,235 | Sept. 14, 1943 |
| "One-Two" | 403,237 | Sept. 14, 1943 |
| "Sugar and Spice" | 403,240 | Sept. 14, 1943 |
| "Ring Around A Rosy" | 403,241 | Sept. 14, 1943 |
| "Boy Blue" | 404,575 | Dec. 17, 1943 |
| "Curly Locks" | 404,581 | Dec. 7, 1943 |
| "Mother Goose" | 413,233 | April 17, 1945 |

and many other marks of similar character not necessary to set forth.

Testimony was taken on behalf of appellee and many exhibits were filed. Appellant took no testimony. Briefs were filed by both parties and they were represented at the hearing before the examiner.

It appears that the dressed dolls of appellee were first made by Miss Nancy Ann Abbott. From early girlhood she has been interested in dolls and the various personages and characters named in nursery rhymes, fairy tales or children's stories which appealed to her imagination and resulted in her making and dressing little dolls portraying the various characters as she imagined them to look. As early as about 1935 or 1936 she started the making and dressing of such dolls as a commercial undertaking so that eventually the business grew until about 5,000 of such dolls per day were being produced and sold in interstate and foreign trade. Miss Abbott personally designs all of the dresses of dolls sold by appellee and she is the planner and supervisor of their manufacture.

It is Miss Abbott's view that little girls fancy the collection of a family of dolls and in the pursuit of such hobby they endeavor to increase their collection until they are surrounded by as many of the dolls as they may be able to get, all appealing to their imagination as personifying figures of nursery rhymes, fairy tales and storybooks. Each little doll, she believes, makes real to its childish owner the person or character which is portrayed by it. Each doll is identified with its name on a little gold colored label attached to a wristlet and is encased in a box upon which a similar silver label is fastened. The labels contain excerpts from, or slightly modified selections of nursery rhymes from which the name of the individual doll is taken.

Buyers of department stores testified that appellee and others have sold dolls depicting characters in nursery rhymes and storybooks, as well as dolls intended to represent different characters in literature, history and nationality. Such practice has been stated to be widely known and such sales have been quite general.

The Examiner of Interferences pointed out that in the notice of opposition it was alleged that appellant's mark "is a generic term" and that it "cannot serve to identify its goods to the exclusion of the like prod-

ucts of opposer, * * *." He held that even though the expression "Nursery Rhymes" had not been shown to have been used by appellee other than orally, that such mark "is generically descriptive of .the entire line of dolls sold by the opposer under the names of nursery rhyme characters," and that therefore appellee and its customers are entitled to use the designation "Nursery Rhymes" to identify their line of dolls representing characters from "Nursery Rhymes." The examiner was of opinion that the exclusive use by appellant of its mark sought to be registered would inevitably lead to confusion and deception of purchasers, resulting in injury to opposer and that under such circumstances it was immaterial that opposer had not used such expression. In support of that holding the examiner cited the cases of Burmel Handkerchief Corp. v. Cluett, Peabody & Co., Inc., 127 F.2d 318, 29 C.C.P.A., Patents, 1024; and Martell & Co. v. Societe Anonyme de la Benedictine, Distillerie de la Liqueur de l'Ancienne Abbaye de Fecamp, 116 F.2d 516, 28 C.C.P.A., Patents, 851.

The examiner further rejected the registration *ex parte,* for the stated reason that the mark would be understood by the purchasing public as referring to any and all doll reproductions of fictional characters from "Nursery Rhymes" as a class. He held that every producer of dolls had the right freely to make and sell his conception of "Nursery Rhyme" characters familiar to everyone from childhood days and that the common right to make any article is inseparable from the right to use words which aptly describe it, citing Singer Mfg. Co. v. June Mfg. Co., 163 U.S. 169, 16 S.Ct. 1002, 41 L.Ed. 118; Beckwith's Estate, Inc., v. Commissioner of Patents, 252 U.S. 538, 40 S.Ct. 414, 64 L.Ed. 705. He therefore held that the descriptiveness clause of Section 5 of the involved act was deemed to constitute a bar to the registration of appellant's mark.

On appeal the commissioner sustained all of the reasoning advanced by the Examiner of Interferences.

We are of opinion that the decision of the commissioner is without error.

While we do not consider the mark "Nursery Rhymes" *descriptive* of dolls generally, we do consider it highly suggestive of a class of dolls in particular. The suggestive mark "Nursery Rhymes" is generic to the specific marks registered to appellee, each of which is individually suggestive of a segment of the group of which appellant's contested mark is suggestive. It is apodictic, in our opinion, that confusion as to the origin of the goods of the parties would follow if registration were granted to appellant. "Boy Blue," "Little Miss Muffett," "To Market," "Polly Put Kettle On," to mention just a few of the registered marks of appellee hereinbefore set out, are certainly "Nursery Rhymes." Clearly then, likelihood of confusion would follow upon the registration of "Nursery Rhymes" to appellant with consequent damage to the appellee.

Both appellant and appellee are in accord in challenging the action of the tribunals of the Patent Office in the rejection of the registration of the mark *ex parte.* Appellant, in this case, can properly bring that issue before this court on appeal. Appellee, however, is not the public and therefore has no right in circumstances such as appear here. The Commissioner of Patents represents the public and has the right and duty, in safeguarding public interest, to decide whether or not an applicant has a right to register. Schering & Glatz, Inc. v. Sharpe & Dohme, Inc., 146 F.2d 1019, 32 C.C.P.A., Patents, 827; Columbia Broadcasting System, Inc., v. Technicolor Motion Picture Corp. et al., 166 F.2d 941, 35 C.C.P.A., Patents, 1019.

It has been held so often by this court, that it is not only the right of the examiner but his duty to consider and determine the registrability of a mark *ex parte* without reference to the issues raised in the notice of opposition, as to be trite. Our holding in the case of Revere Paint Co. v. 20th Century Chemical Co., 150 F.2d 135, 32 C.C.P.A., Patents, 1096, reaffirmed that principle in the many cited cases appearing in that opinion.

For the reasons hereinbefore set out, the decision of the Commissioner of Patents is affirmed.

Affirmed.

O'CONNELL, Judge (dissenting).

Numerous fallacies in the court's decision in this case are explicitly disclosed in authoritative detail (1) by the following opinion prepared and submitted months ago with the view that it would be adopted as the majority opinion, and (2) by the citations following that opinion which point to the entirely contradictory attitude of the court not only in the case at bar but also in other cases upon which the court has relied. It should be noted at the outset that the majority opinion states that "On appeal the commissioner sustained all of the reasoning advanced by the Examiner of Interferences."

The commissioner, however, reversed the examiner's decision which held that the marks were confusingly similar, 77 USPQ 545, 546, column 2, lines 15–18, as hereinafter pointed out. The majority opinion also stated that "While we do not consider the mark 'Nursery Rhymes' *descriptive* of dolls generally, we do consider it highly suggestive of a class of dolls in particular."

A term merely descriptive of an article cannot at the same time be merely suggestive of it. In re One Minute Washer Company, 95 F.2d 517, 25 C.C.P.A., Patents, 978; Celanese Corporation of America v. E. I. Dupont De Nemours and Company, 154 F.2d 146, 33 C.C.P.A., Patents, 948, 950.

The question is whether the decision of the Commissioner of Patents, 77 USPQ 545, correctly sustained the action of the Examiner of Interferences who, in an opposition proceeding, refused to register appellant's trade-mark "Nursery Rhymes" for use with dolls under the Trade-Mark Act of 1905. The opposition was based on the ground that such registration would damage appellee, the owner and prior user on dolls, not only of the registered marks "Storybook" and "Mother Goose" but also of thirty-six illustrative and additional reg-

istered marks bearing the names of nursery rhyme and story book characters.

Regarded as typical of appellee's pleaded marks are those affixed to its dolls bearing names and extracts from nursery rhymes of Mary Had a Little Lamb, Little Miss Muffet, Old Mother Hubbard, Little Bo Peep, and One-Two, Button My Shoe. The record discloses that the trade-mark as actually used by each of the parties is applied to the goods, or to the packages containing the same, by placing thereon a printed label on which the trade-mark is shown.

The notice of opposition, among other things, provided that the concurrent use of the contested marks on the dolls in issue "is likely to cause confusion in the trade and mistake in the mind of the purchasing public and so deceive purchasers regarding the origin of the goods," and that "Nursery Rhymes," appellant's mark, "is a generic term applicable to the nursery rhyme names, characters and expressions used by Opposer upon its doll products as above set forth; and that concurrent use of Applicant's [appellant's] mark 'Nursery Rhymes' and Opposer's above listed marks upon substantially identical goods will confuse the trade and the purchasing public."

Only appellee took testimony but both parties filed briefs and were represented at the final hearing.

The examiner held that while the expression "Nursery Rhymes" did not appear ever to have been used by appellee's organization other than orally, nevertheless the term was unregisterable since it consisted of words merely descriptive of the entire line of dolls sold by appellee under individual names of nursery-rhyme characters.

In addition to finding that appellee was entitled to maintain its opposition on the ground of descriptiveness, in accordance with appellee's notice of opposition, the examiner stated that under the authorities, and without reference to the issues raised by the notice of opposition, it was not only his right but also his duty to proceed ex parte to consider appellant's mark and refuse to register the same because the mark

was merely descriptive of any and all of the fictional characters of nursery rhymes as a class.

The Commissioner of Patents held that "While none of opposer's marks as such appear to resemble 'Nursery Rhymes' either in sound, appearance or meaning, it is my opinion that the examiner of interferences correctly found as alleged by opposer that the expression 'Nursery Rhymes' is a descriptive or generic designation of an entire line of dolls sold by opposer," and for that reason registration of the term "Nursery Rhymes" was prohibited by the mandate of the statute.

The commissioner held further that under the authorities the examiner was required in this and other appropriate cases to consider the applicant's mark ex parte and refuse the registration thereof when the mark was merely descriptive of the merchandise with which the mark was used, and there was no doubt in the commissioner's mind as to the correctness of the ex parte holding of the Examiner of Interferences that the term "Nursery Rhymes" was descriptive of dolls and every producer of dolls was entitled freely to use those words in describing the goods he may offer for sale.

Rule 26.3 [100.263] of the Rules of Practice of the United States Patent Office relating to trade-marks does not provide for separate appeals to the commissioner from the decision of the Examiner of Interferences by any party on inter partes issues, as distinguished from ex parte issues, in an interference, opposition, cancellation, or a concurrent use proceeding; and rule 26.4 [100.264], bearing the title "Appeal to court," so far as here pertinent, likewise makes no such distinction between inter partes and ex parte appeals and reads as follows: "Any applicant for registration * * * or any party to an inter partes proceeding, who is dissatisfied with the decision of the Commissioner, may appeal to the United States Court of Customs and Patent Appeals or may proceed under section 4915, Revised Statutes (U.S.Code, Title 35, sec. 63) * * *."

There is no doubt that appellant has the right to here appeal not only on the issue of descriptiveness decided in the inter partes proceeding but also on the same issue in the ex parte proceeding. Appellee has taken no appeal from the decision of the Commissioner of Patents. However, for the purpose of appeal, his status as opposer is here preserved.

Appellant assigns as its reasons of appeal, among other things, that the Commissioner of Patents manifestly erred in sustaining the opposition in the inter partes proceeding on the ground that appellant's mark "Nursery Rhymes" was descriptive and likely to cause confusion in trade; that the commissioner manifestly erred in holding ex parte to the same effect, and that:

"4. The Commissioner manifestly erred and is inconsistent in holding that 'none of opposer's marks as such appear to resemble "Nursery Rhymes" either in sound, appearance *or meaning*', and at the same time holding that the expression is a 'generic designation of an entire line of dolls sold by opposer'." (Italics quoted.)

Appellee contends that the holding of both the Examiner of Interferences and the Commissioner of Patents that "Nursery Rhymes" as employed in appellant's mark "is descriptive of dolls, and for that reason unregistrable" was "neither necessary nor proper in the case, and is believed to be unsound." In support of its position on the point in question appellee asserts: " * * * The descriptive proviso of Section 5 of the Act of February 20, 1905, applies only to marks which are descriptive of the *goods,* or their *character* or *quality*. Opposer agrees with applicant that the mark 'Nursery Rhymes' does not describe either the goods or the character or the quality thereof. So far as the trade-mark is concerned, it does not indicate whether the goods are dolls, or wearing apparel, or breakfast food. As to character, the mark does not indicate whether the goods are dressed or undressed dolls, or if they are printed cutouts, or textiles, or ceramics, or jewels, or some other kind of product. As to quality, there is nothing to indicate whether the products are penny paper prints or costly

collector's items. On broad principles alone, it is believed that the ruling that 'Nursery Rhymes' is descriptive is erroneous." (Italics quoted.)

The generic name or descriptive word applicable to the article here in issue is the term "doll." The term "Nursery Rhymes" consists of words not primarily descriptive of dolls, but, when applied to dolls, they shed light upon the characteristics of the goods in a suggestive or figurative sense which is not merely descriptive of dolls within the purview of the statute.

The Court in the recent case of Jewel Tea Co., Inc. v. Kraus, D.C., 88 F.Supp. 1003, 1005, made the following statement of the law here applicable: "It is a settled rule that no one can appropriate as a trademark a generic name or descriptive word in the absence of secondary meaning. A generic name gives information as to the nature or class of article and a descriptive word supplies the characteristics and qualities of the article, its color, order, functions, dimensions, and its ingredients. * * *"

Appellee is not the actual originator of the nursery rhymes or the names of the fanciful characters about whom the rhymes were written for the entertainment and edification of children. Appellee's assignor, Nancy Ann Abbott, was interested from childhood in dolls and as a girl would make and dress various characters as she in her imagination visualized them as figures in nursery rhymes, fairy tales, or in children stories which appealed to her.

What was originally the hobby of its founder, has thus grown into a large and successful business: "Starting very modestly with an output of only a few dolls made by Miss Abbott herself, the business has grown to a point where opposer has produced around 5,000 dolls per day * * *. Miss Abbott personally has designed the costumes for all of the dolls made by her organizations, and has planned and supervised their manufacture * * *. The business is one of which she is justly proud; and each little doll is a creation of her own, of which she is properly jealous."

There is no question that appellant is entitled to produce and sell dolls since nursery rhymes and the imaginary individuals and creatures who populate the folklore of childhood may be said to be a part of the national mythology. Figures and names taken therefrom obviously may be exploited with advantage in the sale of dolls for children. All vendors of such dolls have a measurable interest in the lawful use of those figures and names and appellee's right to exploit them to its commercial advantage is not an exclusive proprietary interest. See Durable Toy & Novelty Corporation v. J. Chein & Co., Inc., et al., 2 Cir., 133 F.2d 853, 855; 56 USPQ 339. See also Taylor Instrument Companies v. Fee & Stemwedel, Inc., 7 Cir., 129 F.2d 156, 54 USPQ 124, 126; Egyptian Lacquer Mfg. Co. v. Cleveland Varnish Co., 57 App.D.C. 352, 23 F.2d 773.

The very first proviso of section 5 of the Trade-Mark Act of 1905 embodies the Congressional mandate "That no mark by which the goods of the owner of the mark may be distinguished from other goods of the same class shall be refused registration as a trade-mark on account of the nature of such mark." The Supreme Court in Beckwith's Estate, Inc., v. Commissioner of Patents, 252 U.S. 538, 40 S.Ct. 414, 416, 64 L. Ed. 705, held:

" * * * the requirement of the statute that no trade-mark shall be refused registration, except in designated cases, is just as imperative as the prohibition of the proviso against registration in cases specified.

* * * * * *

"Of course, refusal to register a mark does not prevent a former user from continuing its use; but it deprives him of the benefits of the statute, and this should not be done if it can be avoided by fair, even liberal, construction of the act, designed as it is to promote the domestic and foreign trade of our country."

The record discloses that the faces of appellee's dolls, in general, were very much alike and that the dolls of the "Storybook Series" were alike except for costume. There is no evidence regarding the nature

of the dolls sold by appellant other than the impression to be drawn from the term which he seeks to register. That term when used as a trade-mark obviously distinguishes appellant's goods from other goods of the same class sold by appellee, and under the authorities hereinbefore cited appellant was entitled to registration of his mark.

The commissioner in the instant case decided the issue not only on an inter partes basis but also on an ex parte basis. There is no occasion therefore to discuss the nature of those proceedings as the applicable law is the same in both proceedings. In re Keller, Heumann & Thompson Co., Inc., 81 F.2d 399, 23 C.C.P.A., Patents, 837, 839; In re Laskin Brothers, Inc., 146 F.2d 308, 32 C.C.P.A., Patents, 820. However, the court has sought to bolster its position by dictum which shows numerous contradictions in its previous decisions, all of which have no bearing on the issue in the case at bar.

For example, this court in the exercise of its judicial prerogative has repeatedly and publicly admonished the tribunals of the Patent Office that the primary purpose of the Trade-Mark Act of 1905 was to safeguard the public interest and that, regardless of the issues raised by the notice of opposition, it was not only the right but also the duty of the Commissioner of Patents in an opposition proceeding to refuse to register any mark whose registration was prohibited by the mandate of the statute. Dubonnet Wine Corp. v. Ben-Burk, Inc., 121 F.2d 508, 28 C.C.P.A., Patents, 1298; Englander v. Continental Distilling Co., 95 F.2d 320, 323, 25 C.C.P.A., Patents, 1022, 1024.

The case last cited is one of the leading cases on the point in question. There the court stated in part that:

" * * * *if an applicant's mark be identical with a registered mark owned by another, or confusingly similar thereto, and the goods of the applicant are of the same descriptive properties as those of the registrant, the application for regisration should be denied, regardless of the issues raised by the notice of opposition. * * * *" (Italics supplied.)

Despite the mandate of the statute, and irrespective of the public interest and the doctrine hereinbefore described, this court in the exercise of its judicial prerogative has authorized the registration of an applicant's mark which was not only identical with a registered mark previously owned by another but which also was used by the newcomer on goods of identical descriptive properties. Revere Paint Co. v. 20th Century Chemical Co., 150 F.2d 135, 32 C.C.P.A., Patents, 1096.

There the court authorized the registration of the involved mark with the recommendation that the original owner of the mark could thereafter bring an action for the cancellation of the mark thus registered by the authority of the court.

This court in an opposition proceeding has heretofore permitted, at least twice, the registration of trade-marks whose registration were prohibited by the mandate of the statute because, as stated in the opinion of the court, the opposer had failed to allege in its notice of opposition that the applicant's mark was merely descriptive of the goods with which the mark was used. Hygrade Sylvania Corp. v. Sontag Chain Stores Co. Ltd., 125 F.2d 389, 29 C.C.P.A., Patents, 799; The Crown Overall Manufacturing Company v. Desmond's, 182 F.2d 645, 37 C.C.Pa.A., Patents, 1118.

The reason given for the action of this court in thus permitting the registration of prohibited marks was that neither the opposer nor this court represents the public interest relative to the registration of trademarks and only the commissioner can decide whether or not an applicant has a right to register.

That fallacy has been relied upon constantly by this court in the past in permitting the registration of prohibited marks. No consideration whatever has been given by the court to the fact that the sole and basic reason for the establishment and maintenance of this court is to safeguard the public interest. The statute explicitly provides that the court after hearing an appeal "shall return to the commissioner a certificate of its proceedings and

decision, which shall be entered of record in the Patent Office, *and shall govern the further proceedings in the case."* R.S. § 4914, 35 U.S.C. § 62, 35 U.S.C.A. § 62. (Italics supplied.)

Moreover, discriminatory technicalities with respect to matters of form which always result in repetitious litigation are now outlawed by the Trade-Mark Act of 1946, 15 U.S.C.A. § 1119, which specifically provides: Sec. 37. *"In any action involving a registered mark the court may determine the right to registration,* order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action. *Decrees and orders* shall be certified by the court *to the Commissioner, who shall make appropriate entry upon the records of the Patent Office, and shall be controlled thereby."* (Italics supplied.)

The court hereinabove has discussed and passed upon the question of confusing similarity, despite the fact that appellee took no appeal from the decision of the commissioner on that point and there are no reasons of appeal upon which the court has predicated its decision. A decision handed down simultaneously herewith holds that where there are no reasons of appeal, the court is without jurisdiction to consider any such issue. Alumatone Corporation v. Vita-Var Corporation, 183 F. 2d 612, 37 C.C.P.A., Patents, 1151.

The decision of the Commissioner of Patents, for the reasons hereinbefore stated, should be reversed.