28 C.C.P.A.(Patents)

## DUBONNET WINE CORPORATION v. BEN–BURK, Inc.

### Patent Appeals No. 4480.

Court of Customs and Patent Appeals.
June 30, 1941.

Asher Blum, of New York City (Hugo Mock, of New York City, of counsel), for appellant.

Thomson & Thomson, of Boston, Mass. (Arthur D. Thomson, of Boston, Mass., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

Ben-Burk, Inc., appellee, filed an application in the United States Patent Office on October 17, 1938, for registration of a trade-mark, "Bourbonet," as applied to liqueurs in class 49, distilled alcoholic liquors. The application alleged that the trade-mark "has been continuously used and applied to said goods in applicant's business since October 10th, 1938."

Appellant filed its notice of opposition to the application on January 25, 1939. In the said notice appellant alleged that it is the owner of the trade-mark "Dubonnet," Registration No. 119,580, dated November 27, 1917, and Registration No. 319,695, dated December 4, 1934, as applied to wines. Appellant further alleged that the competing marks are similar in sound and appearance; that the goods of the parties possess the same descriptive properties; that they are used for the same purposes and sold in the same establishments; and that registration of the mark "Bourbonet" would cause confusion in trade with consequent loss and damage to appellant. The allegations of the notice of opposition were traversed by answer.

The record consists of a stipulation by the attorneys for the parties which, excluding formal parts, reads as follows:

"It Is Hereby Stipulated by and between the parties to the above-entitled opposition, through their respective counsel, that, if witnesses were called on behalf of the opposer, Dubonnet Wine Corporation, they would testify as follows:

"1. That the opposer, Dubonnet Wine Corporation, is a corporation organized under the laws of the State of New York as a holding company for the United States interests of the parent French company, Societe Anonyme Dubonnet of Paris, France. The opposer is the owner of record of U. S. certificates of registration No. 119,580, issued November 27, 1917, to said Societe Anonyme Dubonnet, and No. 319,695, issued December 4, 1934, to Dubonnet Wine Corporation, and copies of said registrations are annexed hereto. The opposer is controlled by the French company or its representatives; it is not engaged in any commercial business whatsoever in connection with the manufacture or sale of commodities; and it does not produce, import, sell, or otherwise deal in the Dubonnet Wine hereinafter referred to.

"2. That Dubonnet Wine is and has been produced in France by the French company, Societe Anonyme Dubonnet, and has been an article of commerce with the United States and with the various States thereof since the year 1893 except for the years of National Prohibition; that said wine is now being imported into the United States directly by Schenley Import Corporation, of New York City, as 'sole agents in the U. S. A.'; that said wine is known as an aperitif wine, that is, a wine used largely as an appetizer, either alone or as a cocktail ingredient; and that the beverages known as Dubonnet Wine and Dubonnet Cocktails (cocktails compounded by the consumer, or on his order, with said wine as an essential ingredient) are well known to consumers of alcoholic beverages throughout the United States.

"3. That the final 'T' in the mark Dubonnet is silent; that the applicant's mark Bourbonet is susceptible to pronunciation with the final 'T' silent; and that the term Bourbon of applicant's mark is likely to be pronounced similarly to the word Bourbon as used for Bourbon Whiskey.

"4. That the name Dubonnet is the name of individuals residing in France from whom opposer derives its title to the said certificates of registration Nos. 119,580 and 319,695.

"5. That said Dubonnet Wine has been extensively advertised for many years in the United States and long prior to applicant's first use of Bourbonet on October 10, 1938; and that said Dubonnet Wine has, since the year 1893, been well known not only in the United States, but in France and throughout the world.

"6. That the Dubonnet labels annexed hereto are specimens of the labels used on the wine imported by Schenley Import Corporation and sold in the United States.

"It is Further Stipulated that, if witnesses were called on behalf of the appli-

cant, Ben-Burk, Inc., they would testify as follows:

"7. That the applicant, Ben-Burk, Inc., is a Massachusetts corporation, located and doing business in the City of Boston, Massachusetts; that the applicant is one of the largest liquor rectifiers in the country and has, since the repeal of Prohibition, been engaged in the production and sale of distilled alcoholic liquors, including dry gin, rye and bourbon whiskey, sloe gin, fruit flavored gins, and fruit flavored cordials or liqueurs, known as 'Nectars'; that substantially all of applicant's products are sold under its registered trade-mark Old Mr. Boston, as shown in its United States registration No. 351,462, dated November 2, 1937, a copy of which is annexed hereto; and that said Old Mr. Boston trademark is well and favorably known throughout the United States as indicating the source or origin of applicant's products.

"8. That applicant's mark Bourbonet was first used on October 10, 1938 and is applied to a cordialized whiskey characterized as a liqueur and known as a distilled or 'hard' liquor of 90 proof; that the term Bourbon of applicant's mark is intended by the applicant to indicate to the consumer that applicant's Bourbonet is derived from Bourbon Whiskey; that applicant does not produce or sell wine; and that applicant's Bourbonet mark has not been and is not intended to be applied to wines or other undistilled alcoholic beverages.

"9. That the Bourbonet label annexed hereto is a specimen of the label used on applicant's liqueur or cordialized whiskey.

"It is Further Stipulated that the foregoing constitutes all the evidence which will be relied upon by the respective parties in this opposition, and that neither party will take or file any additional testimony herein."

The Examiner of Interferences sustained the notice of opposition, basing his holding upon the first paragraph of the stipulation. In this respect, the examiner stated in his opinion:

"From the above it appears that the opposer must here be deemed to be the owner of the mark disclosed in Registrations Nos. 119,580 and 319,695 within the meaning of the language 'owned and in use by another' of the confusion-in-trade clause. It is contended by the applicant, however, that the opposer is unable to qualify under the language 'in use by another.' It does not affirmatively appear, however, from the latter part of the language quoted above that the mark was not in use by the opposer on January 19, 1939, the date of filing of the notice of opposition. This stipulation for this purpose and in view of the allegation of ownership of the mark by the opposer must be strictly construed.

"Accordingly, it is held that the opposer can qualify under the statutory language above quoted. The notice of opposition is accordingly sustained."

The examiner also adjudged that appellant is not entitled to the registration for which it made application, for the following reason: "Regardless of the right of the opposer to so intervene, Registrations Nos. 119,580 and 319,695 relied upon by the opposer are each deemed to be a statutory bar to the application involved herein by reason of likelihood of confusion in trade."

The Commissioner of Patents agreed that the goods of the parties possess the same descriptive properties and, as applied to said goods, that the marks are confusingly similar. In reversing the decision of the examiner the commissioner stated:

"Manifestly one who makes no use of a trade-mark will not be damaged by the registration of a confusingly similar mark to another. The examiner took the position, however, that because the date of the stipulation was five months subsequent to the filing of the notice of opposition, opposer's admission of nonuse did not prove that the mark was not being used by opposer at the time the notice was filed. That this construction was erroneous is frankly conceded by opposer's counsel. In their brief on appeal they say:

" 'At the outset of this brief, it is pointed out (in all fairness to applicant and its attorneys) that opposer makes no claim that the facts set forth in the foregoing stipulation are limited to the date of execution thereof. Opposer in stipulating the testimony intended that all the facts recited therein should be effective as of the time of the filing of the opposition.'

"It thus becomes clear that the opposition must fail unless it be held that the 'prima facie evidence of ownership' which attaches to a registered trade-mark under the provisions of section 16 of the Act of February 20, 1905 [15 U.S.C.A. § 96], is not overcome by the affirmative admission of the registrant that it does not use, and consequently does not own, the registered mark. In my opinion that proposition is self-refuting.

"Counsel for opposer argue, and the examiner of interferences held, that the registrations pleaded in the notice of opposition constitute a bar to the registration of applicant's mark, regardless of opposer's alleged rights. That would be true were the registered marks owned by a third party, but that is not the case. While it appears that 'Dubonnet' wine has been sold in the United States for many years, there is nothing in the stipulation of facts to support a finding that the word 'Dubonnet' had been used as a trade-mark on the wines so sold at any time prior to applicant's filing date."

From that decision this appeal was taken.

We are in accord with the holdings below that the goods of the parties possess the same descriptive properties, and that the use of the marks of the parties, as applied to the said goods, gives rise to likelihood of confusion in trade.

■■■ We cannot agree, however, that the decision of the examiner should have been reversed. This court stated, in Englander, etc., v. Continental Distilling Co., 95 F.2d 320, 323, 25 C.C.P.A., Patents, 1022, 1024, that: " * * * in opposition proceedings, the Patent Office tribunals are not limited to the precise issues presented in notices of opposition, but, on the contrary, by virtue of the provisions of section 7 of the Trade-Mark Act [15 U.S.C. A. § 87] * * * may dispose of any question relating to a proposed registration that might properly be considered in an ex parte proceeding, and that, if an applicant's mark be identical with a registered mark owned by another, or confusingly similar thereto, and the goods of the applicant are of the same descriptive properties as those of the registrant, the application for registration should be denied, regardless of the issues raised by the notice of opposition. * * *" and we here reaffirm that doctrine. In our opinion, "It was not only the right but the duty of the tribunals of the Patent Office to determine, ex parte, and without reference to issues raised by the notice of opposition, whether the mark was entitled to registration." Sparklets Corp. v. Walter Kidde Sales Co., 104 F.2d 396, 399, 26 C.C.P.A., Patents, 1342, 1345. That was done by the Examiner of Interferences in this case, and it can make no difference who is the owner of the prior registrations. The determination of the right of the applicant to register its mark is not to be limited to the issues raised by the notice of opposition.

■■■ Appellee contends that since the registered mark "Dubonnet" is owned by the opposer but is used by another it cannot be considered as a mark "owned and in use by another," under the confusion-in-trade clause of section 5 of the Trade-Mark Act of 1905, as amended, 15 U.S.C. A. § 85, so as to bar registration of the mark "Bourbonet." We must not lose sight of the fact that the dominant purpose of the said clause is to protect the purchasing public from confusion and mistake. Sun-Maid Raisin Growers of California v. American Grocer Co., 40 F.2d 116, 17 C. C.P.A., Patents, 1034; California Packing Corp. v. Tillman & Bendel, Inc., 40 F.2d 108, 17 C.C.P.A., Patents, 1048; Skelly Oil Co. v. Powerine Co., 86 F.2d 752, 24 C. C.P.A., Patents, 790. "It [Congress] never intended that a trade-mark should be registered if its use was likely to cause confusion or mistake in the mind of the public or if purchasers were likely to be deceived by its use." Sun-Maid Raisin Growers of California v. American Grocer Co., supra [40 F.2d 118]. The marks here are deceptively similar and are used upon goods of the same descriptive properties. Their concurrent use would be likely to confuse or deceive purchasers. From the public's point of view it matters not that the mark "Dubonnet" is owned by one person and actually used in commerce by another. The important thing is the likelihood that purchasers, upon seeing the mark "Bourbonet" on merchandise, would be confused or deceived into believing that the said merchandise had the same origin as that bearing the mark "Dubonnet." This would be the very confusion and mistake which the act seeks to prevent. It is apparent, therefore, that we should give no effect in this case to appellant's concession that it is not actively engaged in any commercial business.

For the reasons herein expressed, the decision of the Commissioner of Patents that the registrations pleaded in the notice of opposition constitute no bar to the registration of applicant's mark is reversed.

Reversed.