42 C.C.P.A.(Patents)

**JOS. S. COHEN & SONS CO., Inc.**

**v.**

**HEARST MAGAZINES, Inc.**

**Patent Appeal No. 6064.**

United States Court of Customs
and Patent Appeals.

March 30, 1955.

Morris Hirsch, New York City (Frederick Breitenfeld, New York City, and J. Preston Swecker, Washington, D. C., of counsel), for appellant.

Gilbert H. Weil, New York City, for appellee.

Before O'CONNELL, Acting Chief Judge, and JOHNSON, WORLEY, and COLE, Judges.

O'CONNELL, Acting Chief Judge.

This is an appeal from the decision of the Examiner-in-Chief, representing the Commissioner of Patents, 97 USPQ 301, affirming the decision of the Examiner of Interferences granting the petition of appellee, Hearst Magazines, Inc., owner of the mark, "Good Housekeeping," for the cancellation of appellant's notation, "Good Housekeeper," as a trade-mark for women's, misses', and children's dresses, frocks, pajamas, smocks, aprons, hostess coats, etc. The cancelled registration was issued September 27, 1938, under the Act of 1905 and republished February 22, 1949, under the provisions of section 12(c) of the Act of 1946, 15 U.S.C.A. § 1062.

The petition was based on section 2(d) of the 1946 Act, 15 U.S.C.A. § 1052(d), prohibiting the registration of a mark which "so resembles a mark * * * previously used in the United States by another and not abandoned, as to be likely, when applied to the goods of the

applicant, to cause confusion or mistake or to deceive purchasers".

It is alleged in appellee's petition, and established by its evidence, that long prior to appellant's earliest claimed use of the notation "Good Housekeeper" April 29, 1938, petitioner, and those from whom it derived titled, has continuously employed the trade-mark "Good Housekeeping," since its first use in 1880.

Only Hearst Magazines, Inc., took testimony, but counsel for appellant appeared at the hearings and cross-examined appellee's witnesses. There is no controversy with respect to the involved facts. They are succinctly set forth in this excerpt from the decision of the Examiner of Interferences, which was thus quoted with approval by the Acting Commissioner of Patents:

"With regard to the merits of the petition for cancellation, the record shows that the petitioner, since many years prior to any use claimed by the respondent, has been engaged in the publication and sale under the mark 'Good Housekeeping' of a home service magazine having a circulation of more than three million copies per month; that said magazine, which is designed primarily to appeal to women, features editorials covering such subjects as fashions, child care, home decoration and design, food preparation, and the like; that advertising space in the petitioner's 'Good Housekeeping' magazine is much in demand, and *that before any product is accepted for advertising therein it must first undergo and pass laboratory tests conducted by the petitioner to determine the relative merits thereof; that the petitioner for more than forty years has featured in the initial portion of its magazine a warranty that the products advertised are of good quality, and are as advertised; and that, should the contrary be shown, 'Good Housekeeping' magazine will replace them or refund the purchase price thereof. This warranty,* *which is referred to as the 'Good Housekeeping Guarantee Seal', is widely publicized not only by the petitioner but also by its customers who make use thereof in connection with the advertising of their products in competitive magazines, and in newspapers, and the like.* (Emphasis added.) The record further shows that among the products advertised in the petitioner's magazine, and in connection with which the petitioner's guarantee seal is used, are articles of apparel identical in kind with those of the respondent; that the petitioner cooperates with its customers and the retailers of such goods in promoting the sale thereof by permitting and encouraging their use of its 'Good Housekeeping' guarantee seal in connection with the advertising and display thereof, and by furnishing them, upon request, hang tags bearing said seal for use thereon; and that the association of the petitioner's 'Good Housekeeping' guarantee seal with such goods greatly enhances the sales appeal thereof."

Appellant argues here as it did before the tribunals of the Patent Office that the goods to which the respective marks of the parties, magazines and women's wear, are not goods of the same descriptive properties and therefore no likelihood of confusion will result. The tribunals of the Patent Office in concurrent decisions flatly rejected that contention properly pointing out that such a consideration explicitly provided for in the Act of 1905 is no longer a test of equal significance to be applied under the Act of 1946, 15 U.S.C.A. § 1051 et seq. In re Sylvan Sweets Co., 205 F.2d 207, 40 C.C.P.A., Patents, 1048, 1050; Sprayed Insulation, Inc., v. Sprayo-Flake Co., 200 F.2d 703, 40 C.C.P.A., Patents, 732; and authorities therein cited.

The concurring decisions by the Patent Office unequivocally held that the respective marks were confusingly simi-

lar. In so doing, the Primary Examiner made these pertinent remarks:

"The term 'mark' as used in Section [2] (d) is defined in Section 45 of the Act of 1946 as 'any trademark, service mark, collective mark or *certification mark* entitled to registration under this Act whether registered or not' (Italics by the Examiner); and the term 'certification mark' is defined therein as 'a mark used upon or in connection with the products * * * of one or more persons other than the owner of the mark to certify * * * quality * * * of such goods.' *It is clear from the allegations contained in the petition, and the record adduced in its behalf, that the petitioner here relies primarily upon its prior use of the notation 'Good Housekeeping' as a certification mark for articles of apparel within the meaning of Section 45 of the Act of 1946;* and it is the opinion of the examiner that the contemporaneous use by the respondent of the substantially identical notation 'Good Housekeeper' as a trade-mark for identical goods, inevitably would lead purchasers to suppose that such goods were sponsored by the petitioner. Cf. Triangle Publications, Inc., v. Hanson, D.C., E.D., Missouri, E.Div., 70 U. S.P.Q. 478, affirmed, C.C.A., 8 Cir., 74 U.S.P.Q. 280; Triangle Publications, Inc., v. Rohrlich, etc., C.C.C. A., 2 Cir., 77 U.S.P.Q. 96." (Italics not quoted.)

For practical purposes, the respective marks of the parties are identical in sound, meaning, and appearance, and when appellee's certification mark is concurrently applied to identical goods, the likelihood of confusion in trade is inevitable. The predominant rights of the purchasing public in such a situation are to be protected regardless of the contentions and private interests of the respective parties. Tidy-House Paper Products, Inc., v. Tidy House Products Co., 189 F.2d 280, 38 C.C.P.A., Patents, 1099; Burmel Handkerchief Corp. v. Cluett, Peabody & Co., Inc., 127 F.2d 318, 29 C.C.P.A., Patents, 1024.

Appellant in its answer to appellee's petition for cancellation sets up the affirmative defense of laches:

"17. Further answering, Registrant alleges that since 1938 Petitioner knew or should have known of Registrant's use and registration of its trade mark Good Housekeeper, and upon the equitable principles of laches and acquiescence, Petitioner should not prevail in this proceeding."

Appellant submitted no evidence in support of that defense. It has been universally recognized by the courts down through the years that mere delay in asserting a trade-mark right, unaccompanied by a proper showing by the defendant, which establishes an estoppel, cannot sustain the defense of laches. Menendez v. Holt, 128 U.S. 514, 524, 9 S.Ct. 143, 32 L.Ed. 526; Sprayed Insulation, Inc., v. Sprayo-Flake Co., supra; Hylo Co., Inc., v. Jean Patou, Inc., 215 F.2d 282, 42 C.C.P.A., Patents, ——. See also Callmann, Constructive Notice and Laches, 42 T.M.R. 395, 398; Halliday, Laches, Acquiescence and Estoppel in Registration Cases, 40 T.M.R. 85, 93; Independent Nail and Packing Co., Inc., v. Stronghold Screw Products, Inc., 7 Cir., 1953, 205 F.2d 921; Rothman v. Greyhound Corp., 4 Cir., 1949, 175 F. 2d 893; Anheuser-Busch, Inc., v. Du Bois Brewing Co., 3 Cir., 1949, 175 F.2d 370; Hanson v. Triangle Publications, 8 Cir., 163 F.2d 74.

Another reason, however, is this: appellee had no right to cancel appellant's mark prior to the passage of the Act of 1946, because the goods to which the respective marks were affixed were not goods of the same descriptive properties, as required by the Act of 1905, in order for a cancellation petitioner to prevail. In other words, laches presupposes failure to assert a right. Appellee had no such right until the Act of 1946 abolished the "same descriptive proper-

ties" test. Appellee then moved with dispatch to cancel "Good Housekeeper."

Appellant, among other cited authorities, relies on the case of Lightnin Chemical Co. v. Royal Home Products, Inc., 197 F.2d 668, 39 C.C.P.A., Patents, 1031, in urging the application of laches. While the delay there on the part of the cancellation petitioner was 18 years, that case is clearly distinguishable, as appellee had a right there which he failed to assert over this period, because the goods were of the same descriptive properties. Appellee herein had no such right until the Act of 1946 gave it such right. As pointed out in appellee's brief, the doctrine of Willson v. Graphol Products Co., Inc., 188 F.2d 498, 38 C.C.P.A., Patents, 1030, does not apply for the same or similar reasons.

Appellant by its application to register its mark on the principal register thereby sought in the use of its mark to acquire more extensive rights at home and abroad. Steele v. Bulova Watch Co., 344 U.S. 280, 73 S.Ct. 252, 97 L.Ed. 252. Appellant also having sought to acquire the new and substantive property rights provided for by the Act of 1946, as distinguished from the mere procedural rights which it had enjoyed under the Act of 1905, and the competing marks without question being confusingly similar, " 'a sound public policy,' " as Judge Learned Hand wrote in S. C. Johnson & Son, Inc., v. Johnson, 2 Cir., 175 F.2d 176, 178, certiorari denied 338 U.S. 860, 70 S.Ct. 103, 94 L.Ed. 527, " 'requires that [previously existing] trade-marks should receive nationally the greatest protection that can be given them.' "[1]

In view of the nation-wide publicity which "Good Housekeeping" and its Good Housekeeping Institute have developed through the years, it is difficult to conclude that appellant's appropriation and use of the mark, "Good House-keeper," was an innocent use which entitled appellant to further impose not only upon the purchasing public but also upon the rights of the petitioner.

For the reasons hereinbefore stated, the decision of the Commissioner of Patents is affirmed.

Affirmed.

Because of illness, GARRETT, Chief Judge, did not participate in the hearing or decision in this case.

---

[1]. The decision of the Examiner-in-Chief held the respective trade-marks were confusingly similar and felt that there was no necessity for resort to the provisions of the Act relative to the registration of certification marks in deciding the issues presented.