45 C.C.P.A. (Patents).

**W. E. KAUTENBERG CO., Appellant,**

v.

**EKCO PRODUCTS COMPANY, Appellee.**

**Patent Appeal No. 6307.**

United States Court of Customs and Patent Appeals.

Jan. 22, 1958.

Kent W. Wonnell, Chicago, Ill. (Ellsworth M. Jennison, Washington, D. C., of counsel), for appellant.

Roy E. Petherbridge and Stanley Hoods, Chicago, Ill., for appellee.

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY, RICH and JACKSON (retired), Judges.

JOHNSON, Chief Judge.

This is an appeal in an opposition proceeding from the decision of the Commissioner of Patents, 109 USPQ 107, speaking through the Assistant Commissioner, reversing the decision of the Examiner of Interferences which dismissed the opposition and which held that applicant (appellant here) was entitled to the registration sought.

The stipulated facts of record indicate that appellee is primarily engaged in the manufacture and sale of household utensils, including baking pans, kitchen tools, cutlery and household mops. Appellee was incorporated in 1903 under the name of "The Edward Katzinger Company" and began using the mark "Ekco" (obviously taken from the name of the company) in connection with kitchen and household tools and utensils in 1904. In 1944, the corporate name was changed to "Ekco Products Company," which name is presently that of appellee. In the latter part of 1951, appellee acquired the assets of the Minute Mop Company of Chicago, which at that time had been engaged in the manufacture and sale of mops and various other cleaning implements, including brushes, scouring pads and the like, since July, 1941. The business of the Minute Mop Company has been continued since the date of acquisition by appellee as a division of the latter. Appellee had not, before its acquisition of the Minute Mop assets, ever manufactured or sold mops, brushes and the like. It was further stipulated that, since 1944, appellee has spent upwards of 5 million dollars in advertising its products under the trade-mark "Ekco."

Appellant was organized as the "W. E. Kautenberg Company" in 1922 and has been continuously since that time in the business of manufacturing and selling mop holders, mops, mopsticks, cellulose sponge mop units, etc. Its earliest use of "Wekco," the mark sought to be registered, was in 1949. It was stipulated that appellant has spent "many thousands of dollars" in advertising and the like in connection with the marketing of "Wekco" products.

Appellee, in opposing this registration, relies on its registrations of "Ekco" and "Ekcoware"[1] for kitchen cutlery, pots, pans, kettles, shovels, ice cream dishes and molds and other kitchen utensils. While its use of "Ekco" in conjunction with "Minute Mop" on the packages of its mops has been set forth in the record, it does not rely on such use in its opposition.

Reduced to its simplest terms, this case presents the question of whether appellee, owner of the mark "Ekco" as applied to kitchen utensils generally, may successfully oppose the registration to appellant of the mark "Wekco" as applied to mops and related products (the latter mark having been first used subsequent to the former) based upon the confusion-in-trade clause of § 2 of the Lanham

1. Reg. No. 109,742, issued April 18, 1916 to The Edward Katzinger Co. and renewed to appellee by change of name; Reg. No. 109,743, issued April 18, 1916 to The Edward Katzinger Co., and renewed to appellee by change of name; Reg. No. 252,992, issued Feb. 19, 1929 to The Edward Katzinger Co. and renewed to appellee; Reg. No. 425,967, issued Dec. 10, 1946; Reg. No. 426,320, issued Dec. 24, 1946; Reg. No. 432,092, issued Aug. 19, 1947; and Reg. No. 432,-093, issued Aug. 19, 1947.

Act, 60 Stat. 428 (1946), 15 U.S.C.A. § 1052 (1952).

■ The Assistant Commissioner was of the opinion that mops and mop heads "are a 'normal,' 'usual' or 'expected' expansion of opposer's line of houseware items" and that, therefore, there was likelihood of confusion. We feel constrained to agree with the decision rendered below. Though appellant's mark has a "W" added to "Ekco," we are of the opinion that this is not sufficient to distinguish its mark from the "Ekco" of appellee. The marks are similar in appearance, sound and spelling and would not be likely to be distinguished by the average purchaser of the merchandise involved. Secondly, the marks were each derived from the initials of the corporate names of appellant and appellee [2] and present a strange and unusual combination of letters and should be classed, therefore, in the category of coined or fanciful names.

■ It is well settled that coined or fanciful marks should be given a much broader degree of protection than words in common use. Intercontinental Mfg. Co. v. Continental Motors Corp., 230 F. 2d 621, 43 C.C.P.A., Patents, 841. As stated by Callman, 3 Callman, Unfair Competition and Trade-Marks (2d ed. 1950) at 1504:

"* * * If the mark is weak, its protection may have an "extremely narrow scope"; and may indeed be limited to similar goods similarly marketed. Only the strong mark will be protected against infringements [3] arising out of its use in connection with noncompeting goods. * * *"

■■ It is in the area of noncompeting goods that the often discussed concept of the "natural expansion of business" arises, a concept relied upon by the Assistant Commissioner in her decision sustaining the opposition below. This concept has been said to have two aspects: (1) the possibility that the trade practices of the second user may stain the owner's reputation in the minds of his customers; and (2) the possibility that at some time in the future he may wish to extend his business into that market which the second user has begun to exploit. See S. C. Johnson & Son, Inc., v. Johnson, 2 Cir., 1949, 175 F.2d 176, 179, 180. The first aspect, which represents merely another facet of the subject of confusion-in-trade, is the one with which we are here concerned. The confusion involved, of course, is not a confusion of goods but a confusion of business; the deceived customer here buys one party's product in the belief that it originates with the other party or that it is in some way affiliated with the other party's business. 3 Callman, supra, at p. 1539. He does this reasonably thinking that the one party has expanded his business into the field covered by the other party's mark. The question, in the last analysis, is no different from that presented by the ordinary case involving competing goods: is the public likely to be confused as to the origin of the goods by the concurrent use of the two marks involved?

■ In the instant case, we believe that this question must be answered in the affirmative. There is no question but that the goods of each party are sold in the same outlets to the same class of customers (housewives, generally speaking). The goods of each party are in the relatively low-priced field and not apt to be purchased with any considerable degree of discrimination on the purchasers' part. While the goods covered by appellee's registrations do not embrace mops and the like, the field covered thereby is so extensive in the area of household

2. As pointed out, supra, appellee's corporate name was originally "The Edward Katzinger Company."

3. This observation is equally applicable to a case where the registration of a mark is in question. "* * * 'Confusion' in the Patent Office in connection with the registration of a trade-mark should mean the same as 'confusion' in a court of equity where the use of the trade-mark is in dispute. * * *" Sun-Maid Raisin Growers of California v. American Grocer Co., 40 F.2d 116, 119, 17 C.C.P.A., Patents, 1034.

utensils that it would be probable that one purchasing appellant's mops would conclude that appellee had some connection with the manufacture or sale thereof (viz.—that appellee had expanded into the field of mops).

We do not wish to convey the impression by what we have stated above that where one enters into a field such as the manufacture and sale of household utensils, he thereby preempts the field as to every item used in a house. We do feel, however, that, in a situation where facts such as those above set forth exist, and where a party has spent upwards of 5 million dollars in advertising, has built up a substantial reputation with respect to the mark used in connection with his products and the mark is as strong and distinctive a mark as is appellee's, that this court will not view lightly possible encroachment upon that party's good will by a newcomer in the field. The line of separation between "Ekco" and "Wekco," as used with relation to the respective products with which they are connected, is too fine to permit their concurrent use.

Appellant's arguments have been carefully considered but do not dissuade us from the conclusion we have reached. Its contention that no trademark use of "Ekco" on appellee's "Minute Mops" has been shown is immaterial to the case in the view we have taken of it. That there has been no actual confusion between the marks is, of course, not conclusive in an opposition proceeding; while this court has on occasion given weight to the absence of actual confusion in the determination of likelihood of confusion, Myers v. Polk Miller Products Corp., 201 F.2d 373, 40 C.C.P.A., Patents, 739; Bausch & Lomb Optical Co. v. International Industries Inc., 142 F.2d 1016, 31 C.C.P.A., Patents, 1109, it is well settled that actual confusion need not be shown in a proceeding such as this, the ultimate consideration being likelihood of confusion, Celanese Corp. of America v. E. I. Dupont De Nemours & Co., 154 F.2d 146, 33 C.C.P.A., Patents, 948; Bielzoff Products Co. v. White Horse Distillers, Ltd., 107 F.2d 583, 27 C.C.P.A., Patents, 722. We are of the opinion that the peculiar facts of this case override any consideration which might be given to the absence of proof of actual confusion. Appellant's further contention that appellee's marks are classified differently from appellant's mark in the Patent Office is without significance in this case. Harlan-Wallins Coal Corp. v. Transcontinental Oil Co., 64 F.2d 122, 20 C.C.P.A., Patents, 944.

For the foregoing reasons, the decision of the Commissioner is affirmed.

Affirmed.

JACKSON, J., retired, recalled to participate.