45 C.C.P.A. (Patents)

The KALART COMPANY, Inc.,
Appellant,

v.

The CAMERA-MART, Inc., Appellee.

Patent Appeal No. 6370.

United States Court of Customs
and Patent Appeals.

June 18, 1958.

Rehearing Denied Oct. 1, 1958.

Frederick E. Hane, New York City (Hane & Nydick and Abraham J. Nydick, New York City, of counsel), for appellant.

Bernard J. Levy, New York City (Brower, Brill & Gangel, New York City, of counsel), for appellee.

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY, and RICH, Judges.

JOHNSON, Chief Judge.

A petition has been filed to cancel the registration of "Camart"[1] for cameras, camera dollies and parts thereof, tripods and boom arms, camera tripods, prismatic lenses for motion picture cameras, camera mounts, lens extension tubes, motion picture cameras and parts thereof and electrical syncronous motors and soundproof housings known as blimps. Petitioner is the registrant of "Kalart"[2] for photographic cameras and camera attachments, as well as of several other marks, most of which contain the word "Kalart" in combination with another word.

The Examiner of Interferences was of the opinion that the similarity between "Camart" and "Kalart," as applied to the goods in question, was such as to cause confusion, mistake or deception of purchasers. His decision to cancel registrant's mark was reversed on appeal by the Assistant Commissioner, 112 U.S. P.Q. 147, on reconsideration 112 U.S.P.Q. 367, primarily for the reason that the actual trade practices of the parties, as shown by the record, militated against the possibility of confusion urged by petitioner.

Petitioner has appealed from the Assistant Commissioner's decision urging most strenuously that the Assistant Commissioner erred in considering the trade practices of the parties in view of the fact that the certificates of registration of the registrant and petitioner recite identical goods, at least in part.

1. Reg. No. 581,796, issued Nov. 3, 1953.     2. Reg. No. 360,029, issued Sept. 6, 1938.

We agree with the petitioner that the trade practices of the registrant may not be considered in a cancellation proceeding, for the proceeding is based upon the likelihood of damage resulting from the *registration* of a mark. Since the registration gives the owner thereof certain procedural advantages "in connection with the goods or services specified in the certificate"[3] it is rather obvious that a registrant cannot defend in a cancellation proceeding by. showing, on the basis of testimony adduced during such proceeding, that the goods with which its mark is *actually* used (as distinguished from those recited in its certificate) are such as to negative the likelihood of confusion with the petitioner's mark. If the registrant were successful in the proceeding, there is no assurance that its trade practices would not change to correspond with the allegations of the certificate. In view of this fact, we must restrict ourselves to a consideration of the goods recited in registrant's certificate. This case must be considered, therefore, on the basis of the use of the respective marks of the parties on identical goods, namely cameras, parts thereof and the like.

Notwithstanding this identity of goods, we are of the opinion that the decision of the Assistant Commissioner must be affirmed. In our opinion the marks neither look alike nor do they have similar meanings. On the contrary, "Camart" would seem to be suggestive of cameras or the like, whereas "Kalart" is not similarly suggestive. At best, there is only a possibility of a slight similarity in sound, not great enough, however, to raise the possibility of confusion as to origin. Weighing this similarity against the dissimilarities set forth above, we are of the opinion that the marks in question are not confusingly similar.

For the foregoing reasons, the decision of the Assistant Commissioner is affirmed.

Affirmed.

O'CONNELL, Judge (dissenting).

Appellant's mark "Kalart" is arbitrary and nowise descriptive or suggestive of the goods to which it is applied. We have repeatedly held that in cases like this a greater difference is necessary, in sound, meaning and appearance, to avoid the likelihood of confusion with a mark previously owned and in use by another engaged in the sale of identical goods. See, for example, Lauritzen & Co., Inc., v. Borden Co., 239 F.2d 405, 44 C.C.P.A., Patents, 720; Smith v. Tobacco By-Products & Chemical Corp., 243 F.2d 188, 44 C.C.P.A., Patents, 880; W. E. Kautenberg Co. v. Ekco Products Co., 251 F.2d 628, 45 C.C.P.A., Patents, 761.

It is well settled also that similarity in sound alone is sufficient to establish the likelihood of confusion. Skol Company, Inc., v. Olson, 151 F.2d 200, 33 C.C.P.A., Patents, 715; Bordo Products Co. v. B. A. Railton Co., 173 F.2d 981, 36 C.C.P.A., Patents, 1059; Salem Commodities, Inc., v. Miami Margarine Co., 244 F.2d 729, 44 C.C.P.A., Patents, 932.

There is not the slightest doubt that "Cam," the first and accented syllable of the appellee's mark, "Camart," is pronounced as cam in "camera," with a short "a" while the "c" therein is a hard "c," which must be, and universally is, pronounced with the identical sound of "K," the same as the initial letter "k" in appellant's mark.

One of the appellee's witnesses testified that he had always heard "Kal," the initial syllable of appellant's mark, pronounced with a broad "a" as in "rate" or "fate." The record has nowise established, however, that any such pronunciation is dominant or generally applied. It is logical, to say the least, to give the "a" in both marks the short pronunciation, by analogy, to such words as "Kalmuck," "Kalmia," and "Kalamazoo." Moreover, it is a common practice to use the hard "c" in place of the letter "k" in trademarks, tradenames, and advertising, as in "Kleenex," "Kozy Korner" etc. Appellant in its brief explicitly admits that

---

3. Section 7(b) of the Lanham Act, 15 U.S.C.A. § 1057(b).

the last three letters in the respective marks are identical. That syllable is therefore given an identical pronunciation in each of the marks.

"Kalart," which was coined in its inception, is not to be found in any of the dictionaries. The pronunciation of the term is therefore largely a matter of choice, and, so far as I can learn from the record, appellee is nowise authorized nor qualified to impose its pronunciation upon the court. It failed completely to convince the experienced and able Examiner of Trade-Mark Interferences, although it prevailed before the Assistant Commissioner of Patents.

The only recorded difference in pronunciation between the involved marks as a unit is that which might result from the single letters "l" or "m." Those two intermediate letters are so insignificant in these two syllable words that the letters make little distinction, if any, with respect to their sound and appearance in the mark as a whole.[1] As I see it, the design of the appellee's mark might well serve as a device to trap the unwary.

Prior decisions are of little value in deciding the multitude of cases with which the court is flooded on the issue of the confusing similarity of trade-marks. But it does seem appropriate that we here note certain comparable and analogous cases in which we have heretofore held contested marks to be confusingly similar, despite obvious differences which are far greater in scope than those disclosed in the instant case: Beck, Koller & Co., Inc., v. Bakelite Corp., 90 F.2d 349, 24 C.C.P.A., Patents, 1290 (Beckacite and Bakelite); Dubonnet Wine Corp. v. Ben-Burk, Inc., 121 F.2d 508, 28 C.C.P.A., Patents, 1298 (Bourbonet and Dubonnet); McKesson & Robins, Inc., v. American Foundation, etc., 150 F.2d 420, 32 C.C.P.A., Patents, 1235 (Cytamin and Dent-a-Min).

The Supreme Court long ago held that it is the affirmative duty of the newcomer to take reasonable precautions in the selection of a mark, so as to avoid needless public confusion and private injury by the invasion of the field previously occupied by another. Waterman Co. v. Modern Pen Co., 235 U.S. 88, 94, 35 S.Ct. 91, 59 L.Ed. 142.

Another and similarly significant admonition was written by one of the distinguished judges of this court to the following effect in the case of Atlantic Seafood Packers v. Florida Fruit Canners, Inc., 166 F.2d 586, 589, 35 C.C.P.A., Patents, 985:

"A vast field of words, phrases, and symbols is open to one who wishes to select a trade-mark to distinguish his product from that of another. Unquestionably in our ever-increasing complex business life, the trend of modern judicial decisions in trade-mark matters is to show little patience with the newcomer who in adopting a mark gets into the border-line zone between an open field and one legally appropriated to another. As between a newcomer and one who by honest dealing has won favor with the public, doubts are always resolved against the former."

I can of course nowise agree with the conclusion herein of the majority that the involved marks "neither look alike nor do they have similar meanings." The profile of the marks is identical; they have the identical number of letters; and the last three letters thereof, being identical, are likewise so pronounced. As hereinbefore described, the marks look and sound much the same when assembled as a unit.

The public and private injury caused by the registration and contemporary use of confusingly similar marks, or use of a misspelled descriptive mark, or tradename, does not cease to exist when the registration has been effected and the mark is applied to related goods sold in the open market. See, for example, Ar-

1. Thymo Borine Laboratory v. Winthrop Chemical Co., Inc., 155 F.2d 402, 33 C.C.P.A., Patents, 1104.

mour & Co. v. Organon, Inc., 245 F.2d 495, 44 C.C.P.A., Patents, 1010, 1014. Moreover, the windfall of unearned profits that frequently result from the misappropriation of marks, tradenames, etc., belonging to and in use by another, is in any number of cases of vast proportions. See Schnur & Cohan, Inc., v. Academy of Motion Picture Arts, 223 F.2d 478, 42 C.C.P.A., Patents, 963; Cohen & Sons Co., Inc., v. Hearst Magazines, Inc., 220 F.2d 763, 42 C.C.P.A., Patents, 836.

For the reasons hereinbefore stated, the decision appealed from should be reversed.